[No. S107126. Apr. 21, 2003.]

COUNTY OF RIVERSIDE et al., Petitioners, v.
THE SUPERIOR COURT OF RIVERSIDE COUNTY, Respondent;
RIVERSIDE SHERIFF'S ASSOCIATION, Real Party in Interest.

## COUNSEL

William C. Katzenstein, County Counsel, Robert M. Pepper, Principal Deputy County Counsel; Howard, Rice, Nemerovski, Canady, Falk & Rabkin, Steven L. Mayer and Kimberly A. Bliss for Petitioners.

JoAnne Speers for League of California Cities as Amicus Curiae on behalf of Petitioners.

Kathleen Bales-Lange, County Counsel (Tulare), Teresa M. Saucedo, Deputy County Counsel; J. Dennis Crabb, County Counsel (Alpine); Bernard C. Barmann, Sr., County Counsel (Kern), Steven L. Sanders, Deputy County Counsel; Alan K. Marks, County Counsel (San Bernardino), Carol A. Greene, Deputy County Counsel; John J. Sansone, County Counsel (San Diego), Diane Bardsley, Assistant County Counsel; and Frank O. Sieh, County Counsel (Ventura) for County of Tulare, County of Alpine, County of Kern, County of San Bernardino, County of San Diego and County of Ventura as Amici Curiae on behalf of Petitioners.

Timothy A. Bittle for Howard Jarvis Taxpayers Association as Amicus Curiae on behalf of Petitioners.

No appearance for Respondent.

Olins, Foerster & Hayes and Dennis J. Hayes for Real Party in Interest.

Bill Lockyer, Attorney General, Manuel M. Medeiros, State Solicitor General, Andrea Lynn Hoch, Chief Assistant Attorney General, Louis R. Mauro, Acting Assistant Attorney General, and Christopher E. Krueger, Deputy Attorney General, as Amici Curiae on behalf of Real Party in Interest.

Silver, Hadden & Silver, Stephen H. Silver; Carroll, Burdick & McDonough and Ronald Yank for Ventura County Deputy Sheriffs' Association et al., as Amici Curiae on behalf of Real Party in Interest.

Olson, Hagel, Waters & Fishburn, Olson, Hagel & Fishburn, George Waters, N. Eugene Hill, Thomas E. Gauthier; Woodley & McGillivary and Thomas A. Woodley for California Professional Firefighters, Peace Officers Research Association of California and International Association of Fire Fighters, AFL-CIO, C.L.C., as Amici Curiae on behalf of Real Party in Interest.

Green & Shinee and Helen L. Schwab for the Association for Los Angeles Deputy Sheriff's, the Pasadena Police Officers Association, the Torrance Police Officers Association, the Glendale Police Officers Association, the Bell Police Officers Association and the West Covina Police Officers Association as Amici Curiae on behalf of Real Party in Interest.

Lackie & Dammeier, Dieter C. Dammeier and Michael A. Morguess for Los Angeles Police Protective League et al., as Amici Curiae on behalf of Real Party in Interest.

Davis & Reno and Alan C. Davis for Daly City Firefighters, Local 1879, et al., as Amici Curiae on behalf of Real Party in Interest.

## OPINION

**CHIN, J.**—The Legislature recently enacted Senate Bill No. 402 (1999-2000 Reg. Sess.) (Senate Bill 402), which requires counties and other local agencies to submit, under certain circumstances, to binding arbitration of economic issues that arise during negotiations with unions representing firefighters or law enforcement officers. (Code Civ. Proc., § 1299 et seq.) We must determine whether this legislation violates either or both of two provisions of article XI of the California Constitution.[1] Section 1, subdivision (b), states that a county's "governing body shall provide for the . . . compensation . . . of employees." Section 11, subdivision (a), forbids the Legislature to "delegate to a private person or body power to . . . interfere with county or municipal corporation . . . money . . . or perform municipal functions."

We conclude, as did the Court of Appeal, that Senate Bill 402 violates both constitutional provisions. It deprives the county of its authority to provide for the compensation of its employees (§ 1, subd. (b)) and delegates to a private body the power to interfere with county financial affairs and to perform a municipal function (§ 11, subd. (a)).

---

[1] All further section references are to article XI of the California Constitution unless otherwise indicated.

## I. FACTS AND PROCEDURAL HISTORY

Riverside County (the County) and the Riverside Sheriff's Association (Sheriff's Association) engaged in negotiations over compensation for employees of the probation department. In May 2001, they reached an impasse. The Sheriff's Association requested that the dispute be submitted to binding arbitration pursuant to Code of Civil Procedure section 1299 et seq. The County refused, claiming that those provisions violate the California Constitution. The Sheriff's Association filed an action in the superior court to compel arbitration. The court ordered arbitration. It found the binding arbitration law constitutional, explaining, "The matters at issue, to wit, the possible disruption of law enforcement and firefighter services, are not matters of purely local concern but rather are of statewide concern. This statewide concern authorizes the Legislature to act and supports the constitutionality of this legislation."

The County filed a petition for a writ of mandate in the Court of Appeal asking that court to order the superior court to set aside its order compelling arbitration and enter a new order denying the motion to compel arbitration. The Court of Appeal granted the petition. It found that Senate Bill 402 violates both section 1, subdivision (b), and section 11, subdivision (a). We granted the Sheriff's Association's petition for review.

## II. DISCUSSION

### A. *Background*

Senate Bill 402, entitled "Arbitration of Firefighter and Law Enforcement Officer Labor Disputes," added section 1299 et seq. to the Code of Civil Procedure. (Stats. 2000, ch. 906, § 2.) The Court of Appeal opinion describes the bill: "Senate Bill 402 empowers unions representing public safety employees to declare an impasse in labor negotiations and require a local agency to submit unresolved economic issues to binding arbitration. Each party chooses an arbitrator, who together choose the third arbitrator. The panel then chooses, without alteration, between each side's last best offer, based on a designated list of factors. (Code Civ. Proc., §§ 1299.4, 1299.6.)" The bill applies to any local agency or any entity acting as an agent of a local agency, but it does not apply to the State of California even acting as such an agent. (Code Civ. Proc., § 1299.3, subd. (c).)

Senate Bill 402 includes legislative findings. "The Legislature hereby finds and declares that strikes taken by firefighters and law enforcement officers against public employers are a matter of statewide concern, are a

predictable consequence of labor strife and poor morale that is often the outgrowth of substandard wages and benefits, and are not in the public interest. The Legislature further finds and declares that the dispute resolution procedures contained in this title provide the appropriate method for resolving public sector labor disputes that could otherwise lead to strikes by firefighters or law enforcement officers. [¶] It is the intent of the Legislature to protect the health and welfare of the public by providing impasse remedies necessary to afford public employers the opportunity to safely alleviate the effects of labor strife that would otherwise lead to strikes by firefighters and law enforcement officers." (Code Civ. Proc., § 1299.)

█ The County argues that the Legislature's compelling it to enter into binding arbitration of compensation issues violates section 1, subdivision (b), and section 11, subdivision (a). At the outset, we emphasize that the issue is not whether a county may *voluntarily* submit compensation issues to arbitration, i.e., whether the county may delegate its own authority, but whether the Legislature may *compel* a county to submit to arbitration *involuntarily*. The issue involves the division of authority between the state and the county, not what the county may itself do. (See *Adams v. Wolff* (1948) 84 Cal.App.2d 435, 442 [190 P.2d 665] [the predecessor version of section 11, subdivision (a), "is a restraint on the state Legislature's right to interfere with municipal affairs and in no way regulates what may be done by a municipal corporation by charter provision"].)

█ In deciding whether the Legislature has exceeded its power, we are guided "by well settled rules of constitutional construction. Unlike the federal Constitution, which is a grant of power to Congress, the California Constitution is a limitation or restriction on the powers of the Legislature. [Citations.] Two important consequences flow from this fact. First, the entire law-making authority of the state, except the people's right of initiative and referendum, is vested in the Legislature, and that body may exercise any and all legislative powers which are not expressly or by necessary implication denied to it by the Constitution. [Citations.] In other words, 'we do not look to the Constitution to determine whether the legislature is authorized to do an act, but only to see if it is prohibited.' [Citation.] [¶] Secondly, all intendments favor the exercise of the Legislature's plenary authority: 'If there is any doubt as to the Legislature's power to act in any given case, the doubt should be resolved in favor of the Legislature's action. Such restrictions and limitations [imposed by the Constitution] are to be construed strictly, and are not to be extended to include matters not covered by the language used.' " (*Methodist Hosp. of Sacramento v. Saylor* (1971) 5 Cal.3d 685, 691 [97 Cal.Rptr. 1, 488 P.2d 161]; accord, *Pacific Legal Foundation v. Brown* (1981) 29 Cal.3d 168, 180 [172 Cal.Rptr. 487, 624 P.2d 1215].) On

the other hand, "we also must enforce the provisions of our Constitution and 'may not lightly disregard or blink at . . . a clear constitutional mandate.'" (*Amwest Surety Ins. Co. v. Wilson* (1995) 11 Cal.4th 1243, 1252 [48 Cal.Rptr.2d 12, 906 P.2d 1112].)

We discuss the two provisions in the order in which they appear in the California Constitution, mindful, however, that ultimately we must view them together as a whole and not in isolation. (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].)

B. *Section 1, subdivision (b)*

■■■ Section 1, subdivision (b), provides as relevant: "The governing body [of each county] shall provide for the number, compensation, tenure, and appointment of employees."[2] The County argues that Senate Bill 402 violates this provision by compelling it to submit to binding arbitration of compensation issues. We agree. The constitutional language is quite clear and quite specific: the *county*, not the state, not someone else, shall provide for the compensation of its employees. Although the language does not expressly limit the power of the Legislature, it does so by "necessary implication." (*Methodist Hosp. of Sacramento v. Saylor, supra,* 5 Cal.3d at p. 691.) An express grant of authority to the county necessarily implies the Legislature does not have that authority. But Senate Bill 402 compels the county to enter into mandatory arbitration with unions representing its employees, with the potential result that the arbitration panel determines employee compensation. Senate Bill 402 permits the union to change the county's governing board from the body that sets compensation for its employees to just another party in arbitration. It thereby deprives the county of the authority that section 1, subdivision (b), specifically gives to counties.

Any doubt in this regard is dispelled on reviewing the history behind section 1, subdivision (b). (See *Estate of Griswold* (2001) 25 Cal.4th 904, 911-912 [108 Cal.Rptr.2d 165, 24 P.3d 1191].) That provision "was originally enacted in June of 1970, as part of a comprehensive revision of article XI, governing the constitutional prerogatives of and limitations on California cities and counties." (*Voters for Responsible Retirement v. Board of Supervisors* (1994) 8 Cal.4th 765, 772 [35 Cal.Rptr.2d 814, 884 P.2d 645].) Its

---

[2]In its entirety, section 1, subdivision (b), provides: "The Legislature shall provide for county powers, an elected county sheriff, an elected district attorney, an elected assessor, and an elected governing body in each county. Except as provided in subdivision (b) of Section 4 of this article, each governing body shall prescribe by ordinance the compensation of its members, but the ordinance prescribing such compensation shall be subject to referendum. The Legislature or the governing body may provide for other officers whose compensation shall be prescribed by the governing body. The governing body shall provide for the number, compensation, tenure, and appointment of employees."

immediate predecessor, former section 5, had been amended in 1933 "to give greater local autonomy to the setting of salaries for county officers and employees, *removing that function from the centralized control of the Legislature.*" (*Voters for Responsible Retirement v. Board of Supervisors, supra,* at p. 772, italics added.)[3] "The 1933 amendment transferred control over the compensation of most county employees and officers from the Legislature to the boards of supervisors." (8 Cal.4th at p. 774.) The Court of Appeal in this case explained further: "The ballot argument in favor of the 1933 amendment (put to the voters as Proposition 8) informs the voters that, 'This is a county home rule measure, giving the county board of supervisors . . . complete authority over the number, method of appointment, terms of office and employment, and compensation of all . . . employees.' (Ballot Pamp., Special Elec. (June 27, 1933) argument in favor of Prop. 8, p. 10.)" The ballot argument adds that taking "these powers from the State Legislature . . . will bring the matter closer home, and will make possible adjustments of salaries and personnel in accordance with local desires . . . ." (Ballot Pamp., Special Elec. (June 27, 1933) argument in favor of Prop. 8, pp. 10-11.)

 The Sheriff's Association argues that Senate Bill 402 is valid because it involves a matter of "statewide concern." It cites the legislative findings in support of the bill, including that "strikes taken by firefighters and law enforcement officers against public employers are a matter of statewide concern," and that the "dispute resolution procedures" the bill establishes "provide the appropriate method for resolving public sector labor disputes that could otherwise lead to strikes by firefighters or law enforcement officers." (Code Civ. Proc., § 1299.) These findings are entitled to great weight. (*Baggett v. Gates* (1982) 32 Cal.3d 128, 136 [185 Cal.Rptr. 232, 649 P.2d 874].) But they are not controlling. A court may not simply abdicate to the Legislature, especially when the issue involves the division of power between local government and that same Legislature. The judicial branch, not the legislative, is the final arbiter of this question. (*San Francisco Labor Council v. Regents of University of California* (1980) 26 Cal.3d 785, 790 [163 Cal.Rptr. 460, 608 P.2d 277]; *Sonoma County Organization of Public Employees v. County of Sonoma* (1979) 23 Cal.3d 296, 316, 317, fn. 22 [152 Cal.Rptr. 903, 591 P.2d 1].) "[I]t may well occur that in some cases the factors which influenced the Legislature to adopt the general laws may likewise lead the courts to the conclusion that the matter is of statewide

---

[3]As amended in 1933, former section 5 provided in relevant part: "The boards of supervisors in the respective counties shall regulate the compensation of all officers in said counties . . . and shall regulate the number, method of appointment, terms of office or employment, and compensation of all deputies, assistants, and employees of the counties." (Stats. 1933, p. xxxv.)

rather than merely local concern." (*Bishop v. City of San Jose* (1969) 1 Cal.3d 56, 63 [81 Cal.Rptr. 465, 460 P.2d 137].) But the Legislature's view "is not determinative of the issue as between state and municipal affairs . . . . [T]he Legislature is empowered neither to determine what constitutes a municipal affair nor to change such an affair into a matter of statewide concern." (*Ibid.*)

 The Sheriff's Association cites two cases that permitted the Legislature to regulate relations between local governmental entities and their employees. In *Baggett v. Gates, supra*, 32 Cal.3d 128, we held that the Public Safety Officers' Procedural Bill of Rights Act, which, as its name suggests, provides procedural protections to public safety officers, applies to chartered cities despite the home rule provisions of the current section 5, subdivision (b).[4] Citing *Professional Fire Fighters, Inc. v. City of Los Angeles* (1963) 60 Cal.2d 276 [32 Cal.Rptr. 830, 384 P.2d 158], we said that "general laws seeking to accomplish an objective of statewide concern"—in that case, creating uniform fair labor practices—"may prevail over conflicting local regulations even if they impinge *to a limited extent* upon some phase of local control." (*Baggett v. Gates, supra*, at p. 139, italics added.) We found that "the maintenance of stable employment relations between police officers and their employers is a matter of statewide concern." (*Id.* at pp. 139-140.)[5] Similarly, in *People ex rel. Seal Beach Police Officers Assn. v. City of Seal Beach* (1984) 36 Cal.3d 591 [205 Cal.Rptr. 794, 685 P.2d 1145], we held that a charter city is subject to the meet-and-confer requirements of the Meyers-Milias-Brown Act (Gov. Code, § 3500 et seq.).

 The Sheriff's Association argues, "It is well established that the Legislature may regulate labor relations in the public sector because it is a matter of statewide concern." We agree that the Legislature may regulate as to matters of statewide concern even if the regulation impinges "to a limited extent" (*Baggett v. Gates, supra*, 32 Cal.3d at p. 139) on powers the Constitution specifically reserves to counties (§ 1) or charter cities (§ 5). However,

---

[4]As relevant, section 5, subdivision (b), gives charter cities authority "to provide . . . for: (1) the constitution, regulation, and government of the city police force . . . and (4) . . . for the compensation, method of appointment, qualifications, tenure of office and removal of . . . [their] employees." (See *Baggett v. Gates, supra*, 32 Cal.3d at p. 137 & fn. 11.)

[5]We explained why in greater detail: "The consequences of a breakdown in such relations are not confined to a city's borders. These employees provide an essential service. Its absence would create a clear and present threat not only to the health, safety and welfare of the citizens of the city, but also to the hundreds, if not thousands, of nonresidents who daily visit there. Its effect would also be felt by the many nonresident owners of property and businesses located within the city's borders. Our society is no longer a collection of insular local communities. Communities today are highly interdependent. The inevitable result is that labor unrest and strikes produce consequences which extend far beyond local boundaries." (*Baggett v. Gates, supra*, 32 Cal.3d at p. 140.)

*regulating* labor relations is one thing; *depriving* the county entirely of its authority to set employee salaries is quite another.

In *Sonoma County Organization of Public Employees v. County of Sonoma, supra,* 23 Cal.3d at page 317, we noted that section 5 expressly gives charter cities authority over their employees' compensation. Because of this constitutional mandate, as well as prior authority, we held that "the determination of the wages paid to employees of charter cities as well as charter counties is a matter of local rather than statewide concern." (*Sonoma County Organization of Public Employees v. County of Sonoma, supra,* at p. 317.) Accordingly, we found unconstitutional Government Code section 16280, which prohibited the distribution of certain state funds to local public agencies that granted their employees cost-of-living increases, despite a legislative declaration that the statute was a matter of statewide concern. (*Sonoma County Organization of Public Employees v. County of Sonoma, supra,* at pp. 302, 316.) For similar reasons, and despite a similar legislative declaration, we later invalidated legislation requiring the University of California to pay its employees at least prevailing wages. (*San Francisco Labor Council v. Regents of University of California, supra,* 26 Cal.3d at pp. 789-791.)

*Sonoma County Organization of Public Employees v. County of Sonoma, supra,* 23 Cal.3d 296, and *San Francisco Labor Council v. Regents of University of California, supra,* 26 Cal.3d 785, control this case. In *Baggett v. Gates, supra,* 32 Cal.3d at page 137, we distinguished those two cases by noting that the Public Safety Officers' Procedural Bill of Rights Act, which was limited to providing procedural safeguards, "impinges only minimally on the specific directives of section 5, subdivision (b)." Especially pertinent here, we stressed "that the act does not interfere with the setting of peace officers' compensation." (*Ibid.*) By contrast, Senate Bill 402 does not *minimally impinge* on a specific constitutional directive; it *contravenes* that directive entirely. Section 1, subdivision (b), specifically directs that counties have authority over the compensation of their employees; Senate Bill 402 takes that authority away from counties.

Similarly, in *People ex rel. Seal Beach Police Officers Assn. v. City of Seal Beach, supra,* 36 Cal.3d 591, the law in question did not establish a binding process but merely imposed procedural requirements. "While the Legislature established a procedure for resolving disputes regarding wages, hours and other conditions of employment, it did not attempt to establish standards for the wages, hours and other terms and conditions themselves." (*Id.* at p. 597.) We found no conflict between the city's constitutional powers and the limited state regulation. "Although the [law in issue] encourages binding agreements resulting from the parties' bargaining, the governing body of the

agency . . . retains the ultimate power to refuse an agreement and to make its own decisions." (*Id.* at p. 601.) Here, the county's governing body does not retain the ultimate power; Senate Bill 402 gives that power to an arbitration panel at the behest of the union.

We have "emphasize[d] that there is a clear distinction between the *substance* of a public employee labor issue and the *procedure* by which it is resolved. Thus there is no question that 'salaries of local employees of a charter city constitute municipal affairs and are not subject to general laws.' (*Sonoma County Organization of Public Employees v. County of Sonoma, supra*, 23 Cal.3d at p. 317.) Nevertheless, the process by which the salaries are fixed is obviously a matter of statewide concern and none could, at this late stage, argue that a charter city need not meet and confer concerning its salary structure." (*People ex rel. Seal Beach Police Officers Assn. v. City of Seal Beach, supra*, at pp. 600-601, fn. 11; accord, *Voters for Responsible Retirement v. Board of Supervisors, supra*, 8 Cal.4th at p. 781.) Senate Bill 402 is not merely procedural; it is substantive. It permits a body other than the county's governing body to establish local salaries.

The Sheriff's Association also notes that section 1, subdivision (b), states that the governing body shall "prescribe" the compensation of its members (subject to referendum) but shall "provide" for the compensation of its employees. It argues that the word " 'prescribe' . . . empower[s] the designated entity to determine the amount of compensation for the designated officials. However, 'provide' means to compensate so they are available for use, and not necessarily determine the amount of compensation." Thus, the Sheriff's Association appears to argue that the Legislature, or someone else, may set salaries for county employees, and section 1, subdivision (b), merely empowers the county to pay those salaries. It relies on historical evidence indicating that the Constitution Revision Commission had used the words "prescribe" and "provide"—rather than "regulate," as in the 1933 amendment to former section 5—to differentiate between those matters that may, and those that may not, be delegated. (See *County of Madera v. Superior Court* (1974) 39 Cal.App.3d 665, 669-670 & fn. 3 [114 Cal.Rptr. 283].) The argument fails.

Whether the *county* may delegate its own authority is irrelevant here. This county has chosen not to delegate its authority over employee salaries. As noted, the issue involves the distribution of authority between county and state, not what the county itself may do. Use of the words "prescribe" and "provide" did not change the previous law regarding the respective powers of the Legislature and counties. Section 13, adopted at the same time as section 1, subdivision (b), provides: "The provisions of Sections 1(b) (except

for the second sentence) . . . of this Article relating to matters affecting the distribution of powers between the Legislature and cities and counties . . . shall be construed as a restatement of all related provisions of the Constitution in effect immediately prior to the effective date of this amendment, *and as making no substantive change.*" (Italics added.) The language of section 1, subdivision (b), empowering the county to provide for the compensation of employees, is in its last sentence, not its second. Accordingly, section 1, subdivision (b), did not change the law regarding the distribution of power between the counties and the Legislature. (See *Voters for Responsible Retirement v. Board of Supervisors, supra,* 8 Cal.4th at p. 775.) Former section 5 used the single word "regulate," which, as its history demonstrates, includes the setting of salaries.

The Sheriff's Association also cites an unpublished 1992 decision by the Court of Appeal that decided this case that it believes somehow supports its position. ██ Unpublished opinions, however, generally may not be cited or relied on in another action. (Cal. Rules of Court, rule 977(a).) The Sheriff's Association invokes an exception to this general rule, claiming the opinion is relevant under the doctrine of collateral estoppel. (Cal. Rules of Court, rule 977(b).) However, for collateral estoppel to apply, the issue necessarily decided in the previous action must be identical to the one in the current action. (*County of Santa Clara v. Deputy Sheriffs' Assn.* (1992) 3 Cal.4th 873, 879, fn. 7 [13 Cal.Rptr.2d 53, 838 P.2d 781]; *People v. Sims* (1982) 32 Cal.3d 468, 484 [186 Cal.Rptr. 77, 651 P.2d 321].) ██ The issue here is whether Senate Bill 402 is constitutional. That bill, or anything like it, did not even *exist* in 1992. Although the 1992 opinion contains some language that might be pertinent to this case, and that either party might have cited had the opinion been published, the issue it decided—involving the local referendum power—was quite different than the one here. Accordingly, collateral estoppel does not apply, and the unpublished opinion may not be cited.

For these reasons, we agree with the Court of Appeal: "Senate Bill 402 removes from local jurisdictions, at the option of public safety unions, the authority to set the compensation of public safety employees that is expressly given to them by section 1, subdivision (b). This clearly violates section 1, subdivision (b)."[6]

---

[6]The Chief Justice claims we are "reach[ing] out" to decide this question. (Conc. opn. of George, C. J., *post,* at p. 296.) However, section 1, subdivision (b), is as much a part of this case as section 11, subdivision (a). The County argued at all times in the trial court, the Court of Appeal, and this court that Senate Bill 402 violates section 1, subdivision (b); the parties fully briefed the question in the trial court, the Court of Appeal, and this court; the trial court and the Court of Appeal decided the question; and the question is within the scope of our

## C. *Section 11, subdivision (a)*

 Section 11, subdivision (a), provides: "The Legislature may not delegate to a private person or body power to make, control, appropriate, supervise, or interfere with county or municipal corporation improvements, money, or property, or to levy taxes or assessments, or perform municipal functions." The county argues that in enacting Senate Bill 402, the Legislature has impermissibly delegated to a private body—the arbitration panel—the power to interfere with county money (by potentially requiring the county to pay higher salaries than it chooses) and to perform municipal functions (determining compensation for county employees). Again, we agree. This constitutional provision expressly denies the Legislature the power to act in this way. (*Methodist Hosp. of Sacramento v. Saylor, supra,* 5 Cal.3d at p. 691.)

The Sheriff's Association primarily argues that this delegation of authority to the arbitration panel is permissible because the delegation does not involve a purely municipal function but a matter of statewide concern. In *People ex rel. Younger v. County of El Dorado* (1971) 5 Cal.3d 480 [96 Cal.Rptr. 553, 487 P.2d 1193], we upheld legislation designed to encourage regional planning in the Lake Tahoe area, including creation of the Tahoe Regional Planning Agency with jurisdiction over the entire multicounty region. The County of El Dorado contended, among other things, that the legislation violated former section 13, the predecessor version of section 11, subdivision (a), by impermissibly delegating authority to a special commission.[7] Noting that the Lake Tahoe region crosses county lines, we stated that "our cases have recognized 'that [former section 13] was intended to prohibit only legislation interfering with purely local matters.'" (*People ex rel.*

grant of review. We see nothing peculiar in the language of either section 1, subdivision (b), or section 11, subdivision (a), that makes the latter but not the former ripe for decision. Indeed, the cases closest on point all involve home rule provisions comparable to those of section 1, subdivision (b). (*People ex rel. Seal Beach Police Officers Assn. v. City of Seal Beach, supra,* 36 Cal.3d 591; *Baggett v. Gates, supra,* 32 Cal.3d 128; and *Sonoma County Organization of Public Employees v. County of Sonoma, supra,* 23 Cal.3d 296.) Moreover, because we must view the two constitutional provisions together as a whole and not in isolation, it would be difficult to decide the section 11, subdivision (a), question without reference to section 1, subdivision (b).

It should be apparent that we are deciding only the question before us—the constitutionality of Senate Bill 402.

[7] Former section 13 provided, as relevant: "The Legislature shall not delegate to any special commission, private corporation, company, association or individual any power to make, control, appropriate, supervise or in any way interfere with any county, city, town or municipal improvement, money, property, or effects . . . , or to levy taxes or assessments or perform any municipal function whatever . . . ." (Stats. 1969, p. A-59, repealed June 2, 1970; see *People ex rel. Younger v. County of El Dorado, supra,* 5 Cal.3d at pp. 499-500.) Section 11, subdivision (a), the successor provision, no longer prohibits delegation of powers to special commissions, so the legislation at issue in that case would clearly have been valid

*Younger v. County of El Dorado, supra,* at p. 500.) It does not invalidate delegation "to accomplish purposes of more than purely local concern." (*Id.* at p. 501.)

The Sheriff's Association argues that because of "the threat to the public safety caused by work stoppages," all matters concerning firefighters and peace officers are of statewide concern that the state may delegate as it thinks best. We disagree. Section 5, subdivision (a), gives charter cities general authority over "municipal affairs." Although the term "municipal affairs" is slightly different than section 11, subdivision (a)'s term "municipal functions," we believe that cases interpreting what are "municipal affairs" provide guidance in deciding what are "municipal functions." We have stated that "the various sections of article XI fail to define municipal affairs," and, accordingly, the courts must "decide, under the facts of each case, whether the subject matter under discussion is of municipal or statewide concern." (*Professional Fire Fighters, Inc. v. City of Los Angeles, supra,* 60 Cal.2d at p. 294; accord, *Baggett v. Gates, supra,* 32 Cal.3d at p. 136, fn. 10.) By this we meant that article XI contains no global definition of what are municipal affairs (or functions). But it is not entirely silent on the subject, and it is not silent here. "[T]his is not the usual case in which the courts are without constitutional guidance in resolving the question whether a subject of local regulation is a 'municipal affair' . . . ." (*Ector v. City of Torrance* (1973) 10 Cal.3d 129, 132 [109 Cal.Rptr. 849, 514 P.2d 433], quoted in *Sonoma County Organization of Public Employees v. County of Sonoma, supra,* 23 Cal.3d at p. 316.) Section 1, subdivision (b), states that the *county* shall provide for employee compensation. Viewing, as we must, sections 1, subdivision (b), and 11, subdivision (a), together and not in isolation, they clearly provide that compensating county employees is a municipal function.

In *Ector v. City of Torrance, supra,* 10 Cal.3d at page 132, we had "the benefit of a specific directive in subdivision (b) of [section 5], which grants 'plenary authority' to charter cities to prescribe in their charters the 'qualifications' of their employees." Accordingly, we said that questions involving the qualifications of city employees are municipal affairs with which the Legislature may not interfere. (*Id.* at p. 133.) Similarly, in *Sonoma County Organization of Public Employees v. County of Sonoma, supra,* 23 Cal.3d at page 317, we cited section 5's reference to compensation of employees to conclude that determining the wages of employees of charter cities and counties is a matter of local rather than statewide concern. Thus, establishing compensation for its employees is for the county to do, and section 11,

under the current provision. (*People ex rel. Younger v. County of El Dorado, supra,* at p. 500, fn. 22.)

subdivision (a), prohibits the Legislature from delegating that function to a private body.

In *People ex rel. Younger v. County of El Dorado, supra,* 5 Cal.3d 480, the Legislature had established a special commission with jurisdiction over a regional problem. At that time, although no longer, the Constitution prohibited the delegation of authority to a special commission as well as to a private party. (See fn. 7, *ante.*) We upheld commissions that performed a function that " 'would be impossible for any one of the constituent municipal or suburban units to perform.' " (*People ex rel. Younger v. County of El Dorado, supra,* at p. 501.) No single county or other local agency could coordinate planning for the entire Lake Tahoe region. By contrast, a county may easily provide for the compensation of its own employees. Thus, neither the constitutional language nor the rationale of *People ex rel. Younger v. County of El Dorado* applies here.

As with section 1, subdivision (b), the Sheriff's Association argues that the Legislature's power to *regulate* labor relations as to matters of statewide concern permits it to delegate this regulatory authority to an arbitration panel. The argument fails for the same reasons: Senate Bill 402 does not just permit the arbitration panel to impinge minimally on the county's authority; it empowers the panel actually to set employee salaries. The Sheriff's Association also argues that binding arbitration is a "quid pro quo for the lack of a right to strike." (See Lab. Code, § 1962; *County Sanitation Dist. No. 2 v. Los Angeles County Employees' Assn.* (1985) 38 Cal.3d 564, 586 [214 Cal.Rptr. 424, 699 P.2d 835].) This may (or may not) provide a policy argument in favor of binding arbitration, but it provides no reason to disregard a clear constitutional mandate. Moreover, like the Court of Appeal, we note that the state has exempted itself from this binding arbitration requirement. (Code Civ. Proc., § 1299.3, subd. (c).) We are skeptical that awarding binding arbitration as a quid pro quo can be of statewide concern to everyone except the state.

The Sheriff's Association argues that the arbitration panel is a public, not private, body within the meaning of section 11, subdivision (a). We disagree. The statute requires the two parties to select a "person" to be a member of the panel. These two then select "an impartial person with experience in labor and management dispute resolution to act as chairperson of the arbitration panel." (Code Civ. Proc., § 1299.4, subd. (b).) If the two do not agree on the third person, the statute has other provisions for selecting that person, but it continually uses the word "person" or "persons" to describe who may be the chairperson. (Code Civ. Proc., § 1299.4, subd. (c).) Nothing in the statute requires the arbitrators to be public officials; indeed, the statute appears to contemplate, and the parties assume, they will be private persons.

The Sheriff's Association agrees that the members of the arbitration panel may be private persons, but it argues that empowering them to render binding arbitration decisions makes them a public body. It relies on a Rhode Island case that involved a similar mandatory arbitration law. (*City of Warwick v. Warwick Regular Firemen's Ass'n* (1969) 106 R.I. [256 A.2d 206].) In that case, the court reasoned that the Legislature gave the arbitration panel "the power to fix the salaries of public employees . . . without control or supervision from any superior," and, therefore, each member of the panel "is a public officer and . . . collectively the three constitute a public board or agency." (*Id.* at pp. 210-211.) The Sheriff's Association seeks to apply this reasoning here. But the constitutional provision in that case was very different from the one here. The Rhode Island Constitution merely stated that the "legislative power . . . shall be vested" in the senate and house of representatives. (*City of Warwick v. Warwick Regular Firemen's Ass'n, supra*, 256 A.2d at p. 208, fn. 1.) It contained no language limiting the Legislature's delegation power like that of section 11, subdivision (a). As pointed out in a case involving the power to tax, if delegating to private persons the power to do a public act makes them a public body for purposes of section 11, subdivision (a), then "the constitutional provision would never be violated. Anyone to whom the Legislature delegated the power to tax [or any other power specified in section 11, subdivision (a)] would automatically cease being a 'private person or body.' " (*Howard Jarvis Taxpayers' Assn. v. Fresno Metropolitan Projects Authority* (1995) 40 Cal.App.4th 1359, 1387 [48 Cal.Rptr.2d 269].) Section 11, subdivision (a), is not self-canceling. The act of delegation does not change a private body into a public body and thereby validate the very delegation the section prohibits. The Legislature has, indeed, delegated authority to a private body.

Both parties cite decisions from other states in support of their positions. The only cases that are relevant are those that involve statutory and constitutional provisions comparable to California's. These cases generally support the County. Section 11, subdivision (a), "was taken from Article III, section 20 of the 1873 Pennsylvania Constitution." (*Howard Jarvis Taxpayers' Assn. v. Fresno Metropolitan Projects Authority, supra*, 40 Cal.App.4th at p. 1377, citing Peppin, *Municipal Home Rule in California: IV* (1946) 34 Cal.L.Rev. 644, 677.) The Pennsylvania courts originally invalidated binding arbitration legislation under their constitutional provision. (*Erie Firefighters Local No. 293 v. Gardner* (1962) 406 Pa. 395 [178 A.2d 691].) As the Sheriff's Association notes, the Pennsylvania Supreme Court has since upheld binding arbitration. (*Harney v. Russo* (1969) 435 Pa. 183 [255 A.2d 560].) But that was *after* the Pennsylvania Constitution was amended specifically to permit such arbitration. (*Id.* at p. 562; see also *City of Washington v. Police Department* (1969) 438 Pa. 168 [259 A.2d 437, 441-442, fn. 6] ["A

constitutional amendment was necessary for this provision because it had previously been held that a statute making an arbitration award binding on a public employer would be an unconstitutional delegation of legislative power"].) The California Constitution has not been amended to permit the Legislature to impose binding arbitration on counties. Thus, the Pennsylvania experience supports the County's position.

Two other states have also invalidated arbitration provisions under constitutional provisions similar to section 11, subdivision (a). (*City of Sioux Falls v. Sioux Falls, etc.* (1975) 89 S.D. 455 [234 N.W.2d 35] [binding arbitration]; *Salt Lake City v. I.A. of Firefighters, etc.* (Utah 1977) 563 P.2d 786 [arbitration that is partially binding, but advisory only as to salary and wage matters].) One court reached a contrary result, but it was unable to achieve a majority opinion. (*State v. City of Laramie* (Wyo. 1968) 437 P.2d 295 (plur. opn.).) We find the Wyoming case unconvincing. As recognized in *City of Sioux Falls v. Sioux Falls, etc., supra*, at page 36, the Wyoming court cited Pennsylvania law but failed to note that the Pennsylvania Constitution had been amended to permit binding arbitration. In any event, California's constitutional history, including that behind section 1, subdivision (b), distinguishes California from Wyoming. This history, and the two California constitutional provisions, read together, make clear that, in California, the county, not the state or anyone else, sets compensation for its employees.

The Sheriff's Association also cites our opinion in *Fire Fighters Union v. City of Vallejo* (1974) 12 Cal.3d 608 [116 Cal.Rptr. 507, 526 P.2d 971]. In that case, we interpreted "a provision for arbitration in a city charter affecting public employees." (*Id.* at p. 611.) We summarily rejected an argument by an amicus curiae "that the disputed issues are not arbitrable because submission of them to arbitration constitutes an unconstitutional delegation of legislative power. Arbitration of public employment disputes has been held constitutional by state supreme courts in *State v. City of Laramie* [, *supra*,] 437 P.2d 295 and *City of Warwick v. Warwick Regular Firemen's Ass'n* [, *supra*,] 106 R.I. 109. [¶] To the extent that the arbitrators do not proceed beyond the provisions of the Vallejo charter there is no unlawful delegation of legislative power." (*Id.* at p. 622, fn. 13.) That case does not aid the Sheriff's Association. As noted, this case involves the division of authority between state and county, not what a local agency may itself choose to do. Our citations to the Wyoming and Rhode Island decisions cannot be read as a blanket endorsement of everything in those cases, including matters irrelevant to the issue before us. Our opinion did not even mention section 1, subdivision (b), or section 11, subdivision (a).

### III. CONCLUSION

John Donne wrote, "No man is an island, entire of itself." (Donne, Devotions upon Emergent Occasions, No. 17.) So, too, no county is an island, entire of itself. No doubt almost anything a county does, including determining employee compensation, can have consequences beyond its borders. But this circumstance does not mean this court may eviscerate clear constitutional provisions, or the Legislature may do what the Constitution expressly prohibits it from doing.

The Court of Appeal correctly held that Senate Bill 402 violates sections 1, subdivision (b), and 11, subdivision (a). Accordingly, we affirm the judgment of the Court of Appeal.

Kennard, J., Baxter, J., Werdegar, J., and Brown, J., concurred.

**GEORGE, C. J.,** Concurring.—I agree that the legislation before us is constitutionally impermissible in light of article XI, *section 11, subdivision (a)*, of the California Constitution (article XI, section 11(a)), which prohibits the Legislature from delegating "to a private person or body" a county's power to "perform municipal functions." In my view, however, the majority should base its decision solely upon that relatively narrow constitutional provision, and need not and should not reach out to decide the distinct and potentially much more far-reaching question whether the legislation also violates article XI, *section 1, subdivision (b)*, of the California Constitution (article XI, section 1(b)), which provides simply and generally that "[t]he governing body [of a county] shall provide for the number, compensation, tenure, and appointment of employees." As I shall explain, the issue whether the general "home rule" provisions of article XI, section 1(b) preclude the Legislature from adopting the legislation at issue presents a much closer question than the majority acknowledges, and I believe that traditional principles of judicial restraint should lead the court to refrain from prejudging that broader constitutional issue when there is a narrower and fully adequate alternative ground upon which to rest its decision. Accordingly, I cannot join the majority opinion.

### I

Article XI, section (1)(b), provides in relevant part: "The Legislature shall provide for county powers, an elected county sheriff, an elected district attorney, an elected assessor, and an elected governing body in each county. . . . *The governing body shall provide for the number, compensation, tenure and appointment of employees.*" (Italics added.)

The majority states that the language of article XI, section (1)(b) "is quite clear and quite specific: the *county*, not the state, not someone else, shall provide for the compensation of its employees" (maj. opn., *ante*, at p. 285), and concludes that the legislation in question—Senate Bill No. 402 (1999-2000 Reg. Sess.) (enacting Code Civ. Proc., § 1299 et seq.) (hereafter Senate Bill 402)—conflicts with this language because it "compels the county to enter into mandatory arbitration with unions representing its employees, with the potential result that the arbitration panel determines employee compensation." (Maj. opn., *ante*, at p. 285.)

In my view, the issue is not nearly as simple or clear-cut as the majority suggests. Although article XI, section (1)(b) gives all counties (including noncharter counties) the authority to control the appointment and compensation of their own employees (prior to 1933, the Legislature exercised that authority over the employees of noncharter counties), other sections of article XI provide that *charter counties* and *charter cities* have similar or even broader authority to control the appointment, compensation, and dismissal of their employees. (See Cal. Const., art. XI, §§ 4, subd. (f), 5, subd. (b)(4).) Despite these explicit constitutional provisions establishing broad home rule authority of charter counties and charter cities over their own public employees, over the last half-century the Legislature has enacted a host of laws that govern various aspects of the labor relations of local public entities, and numerous cases have upheld the right of the state to enact such legislation—which takes precedence over contrary rules established by local entities.

For example, the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.) prohibits counties and other local entities (along with most other employers) (Gov. Code, § 12926, subd. (c)) from discriminating in employment on the basis of the categories enumerated in the act, and the provisions of that act—for example those barring discrimination on the basis of disability or marital status—obviously limit a local entity's authority over the appointment or tenure of its employees. Perhaps most relevant to the present case is the Meyers-Milias-Brown Act (Gov. Code, § 3500 et seq.) (MMB Act), which places upon local entities the obligation to meet and confer in good faith with their employees on *wages* and other conditions of employment, and which grants public employees a variety of remedies to enforce such protections. As the majority recognizes, in *People ex rel. Seal Beach Police Officers Assn. v. City of Seal Beach* (1984) 36 Cal.3d 591 [205 Cal.Rptr. 794, 685 P.2d 1145], this court specifically upheld the validity of the MMB Act as applied to a charter city, concluding that in light of the statewide concern addressed by the act—the establishment of "[f]air labor practices, uniform throughout the state" (*id.* at p. 600)—application of the act did not violate the home rule provisions of California Constitution,

article XI, section 5, subdivision (b). Of course, the majority does not suggest that the provisions of article XI, section 1(b)—setting forth the home rule authority of *noncharter* counties—place any greater restrictions on the Legislature's authority than the even broader constitutional home rule provisions applicable to *charter* counties and *charter* cities.

Once it is recognized that the provisions of article XI, section 1(b) do not preclude the Legislature from promulgating a detailed collective bargaining regime that counties are required to follow in negotiating over compensation with all of their employees—the type of structure set forth in the MMB Act—it seems evident that the question whether the legislation at issue in this case violates article XI, section 1(b), is not as clear as the majority suggests. Although the majority asserts emphatically that "Senate Bill 402 is not merely procedural; it is substantive" (maj. opn., *ante*, at p. 289), that characterization of the legislation is hardly self-evident. In enacting Senate Bill 402, the Legislature did *not* undertake *itself* to set the compensation for county firefighters or police officers, but instead prescribed *a dispute resolution procedure* that is to be employed when the county and its firefighters or police officers are unable to reach agreement on economic issues that fall within the "meet and confer" requirement of the MMB Act. Furthermore, although the procedure set forth in the act calls for *binding* arbitration, the particular form of binding arbitration prescribed by the act does not afford the arbitrators free rein to resolve the dispute by setting compensation at whatever level the arbitrators deem appropriate. Instead the act limits the arbitrators' discretion to choosing between the "last best offer" of each of the parties on each unresolved issue. (Code Civ. Proc., § 1299.6.)

It is true, of course, that the binding arbitration procedure established in Senate Bill 402 impinges directly upon the county's general authority to retain the last word on employee compensation. But it is not at all clear that this circumstance is necessarily fatal to the validity of state legislation under article XI, section 1(b). As noted above, the relevant language of this constitutional provision provides that "[t]he governing body [of the county] shall provide for the number, *compensation, tenure, and appointment* of employees." (*Ibid.*, italics added.) Thus, under article XI, section 1(b), a county's constitutionally granted authority over the compensation of its employees appears no greater than the county's authority over the appointment or tenure of its employees. Under the California Fair Employment and Housing Act (FEHA), the Fair Employment and Housing Commission (FEHC) is granted the authority to resolve a claim that a county has engaged in unlawful employment discrimination in the appointment or dismissal process (Gov. Code, § 12960 et seq.), and a decision of the FEHC against the county clearly has the effect of "trumping" the authority the county

otherwise would have to refuse to appoint or dismiss a person on the basis, for example, of his or her marital status or sexual orientation. (See Gov. Code, § 12940.) The circumstance that the FEHC has the authority in such instances to displace the *ultimate* decision that a county otherwise would be empowered to make regarding the appointment or tenure of a particular applicant, however, never has been viewed as casting any constitutional doubt on the application of the FEHA to counties or other local public entities. If the state properly may impinge upon a county's power to *appoint* or *dismiss* employees in order to serve the statewide concern of protecting employees from discrimination, it is not immediately apparent why the state, to serve the statewide concern of protecting the public from the widespread risks posed by strikes by firefighters or police officers, may not similarly impinge upon a county's authority to have the last word on employee *compensation.*

For these reasons, I find the question whether Senate Bill 402 violates article XI, section 1(b) to be much closer and more difficult than the majority acknowledges.

## II

Moreover, as noted at the outset, there is no need for the majority to resolve the question whether Senate Bill 402 violates article XI, section 1(b), in light of the majority's conclusion that Senate Bill 402 violates the entirely distinct provisions of article XI, section 11(a). The majority's holding under article XI, section 11(a) clearly is sufficient in itself to resolve this case. And because article XI, section 11(a) is a more focussed provision than article XI, section 1(b), and is directed at the particular "evil or mischief" reflected in Senate Bill 402—which is a measure enacted by the Legislature delegating to a private body the power to perform a municipal function that otherwise would be performed by a county—that constitutional provision unquestionably provides a much narrower ground of decision than the broad and more general provisions of article XI, section 1(b).

Article XI, section 11(a) reads in full: "The Legislature may not delegate to a private person or body power to make, control, appropriate, supervise, or interfere with county or municipal corporation improvements, money, or property, or to levy taxes or assessments, or perform municipal functions."

I agree with the majority's conclusion that in enacting Senate Bill 402 the Legislature violated this provision by delegating to a private body (the arbitration panel) the power to perform a municipal function (establishing the level of compensation for certain county employees). Contrary to the

argument of the Riverside Sheriff's Association, an arbitration panel cannot properly be viewed as a "public body" exempt from the restrictions of article XI, section 11(a), simply because the panel is empowered to perform a public function, because such reasoning would vitiate the fundamental purpose and scope of this constitutional provision. And I agree with the majority that the case of *People ex rel. Younger v. County of El Dorado* (1971) 5 Cal.3d 480 [96 Cal.Rptr. 553, 487 P.2d 1193] provides no support for the Riverside Sheriff's Association's argument. The decisionmaking body to which governmental functions have been delegated in the present case—unlike the body in *El Dorado*—is not charged with the responsibility of taking into account statewide or regional concerns in making its decisions, but instead is granted the authority to decide a quintessentially local question.

Accordingly, I agree with the majority that—in view of the wording of article XI, section 11(a)—the Legislature may not compel an unwilling local public entity to submit a municipal function to binding arbitration by a private body.

### III

By reaching out unnecessarily to rest its decision on the broad provisions of article XI, section 1(b), when a decision based upon the more focussed provisions of article XI, section 11(a) would suffice, the majority not only fails to heed traditional principles of judicial restraint, but also creates an unfortunate precedent that may improperly restrict the Legislature's authority in the future to fashion a remedy for statewide or regional safety or health problems resulting from strikes or other labor-related actions of local public health or safety employees. Although article XI, section 11(a), prohibits the Legislature from enlisting a *private* arbitration panel to resolve a local police or firefighter labor conflict that threatens to endanger neighboring communities, that constitutional provision would not preclude the Legislature from granting a *public* body—perhaps like the Public Employment Relations Board (Gov. Code, § 3541)—the authority to review and resolve a local labor dispute that poses a significant risk to public safety or health beyond the borders of the local public entity. In my view, it is improper to prejudge the question of the validity or invalidity of such a legislative measure that is not before us, and we should avoid an unnecessarily broad holding that may have the effect of prematurely resolving that question and restricting the options available to the other two branches of government.

**MORENO, J., Concurring.**—I concur in the majority's result. I write separately because I believe the majority's analysis requires some qualification.

The majority recognizes that the governing body of counties are expressly authorized under article XI, section 1, subdivision (b) of the California Constitution to provide for the "compensation . . . of employees," and that, by necessary implication, the Legislature is not constitutionally authorized to set employee compensation. (Maj. opn., *ante*, at p. 285.) The majority further recognizes that the Legislature may nonetheless regulate to some degree the process by which such compensation is negotiated. (Maj. opn., *ante*, at pp. 287-288.) The critical distinction for the majority is between "regulating labor relations" and "depriving the county entirely of its authority to set employee salaries." (*Id.* at p. 288, italics omitted.) This distinction explains, for example, our upholding the imposition of labor relations statutes such as the Meyers-Milias-Brown Act on local public agencies (see *People ex rel. Seal Beach Police Officers Assn. v. City of Seal Beach* (1984) 36 Cal.3d 591 [205 Cal.Rptr. 794, 685 P.2d 1145]) while holding unconstitutional a law denying certain state funds to such agencies that grant their employees cost-of-living increases (*Sonoma County Organization of Public Employees v. County of Sonoma* (1979) 23 Cal.3d 296, 317-318 [152 Cal.Rptr. 903, 591 P.2d 1] (*County of Sonoma*)).

Although this analysis may be useful, it should not be employed inflexibly. Even in the area of local employee compensation, the distinction between matters of local and statewide concern is not necessarily invariable. As we have stated, the " 'constitutional concept of municipal affairs . . . changes with the changing conditions upon which it is to operate. What may at one time have been a matter of local concern may at a later time become a matter of state concern controlled by the general laws of the state.' " (*Bishop v. City of San Jose* (1969) 1 Cal.3d 56, 63 [81 Cal.Rptr. 465, 460 P.2d 137].) Although California Constitution, article XI, section 1, subdivision (b) appears to preclude the Legislature from setting outright the compensation of county employees, I am not persuaded that state regulation of wage-setting procedures, even when that regulation intrudes upon the county's autonomy as much as it does in the present case, is forever forbidden. The question we left open in *County of Sonoma, supra*, 23 Cal.3d at page 318, is whether similarly intrusive legislation may nonetheless be justified by the existence of a statewide emergency, which the legislation is reasonably designed to address.

That same question is, I believe, left open in this case. There can be no doubt that satisfactory labor relations between local governments and public safety employees is a matter that may transcend local concerns. We need not decide whether some kind of statewide emergency might constitutionally justify the legislation at issue here. No such emergency has been alleged. Senate Bill No. 402 (1999-2000 Reg. Sess.) appears to be

prophylactic rather than responsive to an actual crisis in public safety officer wages, recruitment, or job performance. Thus, even if the presumption of unconstitutionality for legislation such as Senate Bill No. 402 may be rebutted by an adequate showing of extraordinary state interest, that presumption was not rebutted in this case.