[No. C064178. Third Dist. Oct. 6, 2010.]

OFFICE OF THE INSPECTOR GENERAL et al., Petitioners, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
THE SACRAMENTO BEE et al., Real Parties in Interest.

**COUNSEL**

Bruce A. Monfross for Petitioners.

No appearance for Respondent.

Ram & Olson and Karl Olson for Real Parties in Interest.

**OPINION**

**CANTIL-SAKAUYE, J.**—In August 2009, Phillip Garrido was arrested for kidnapping a young girl, holding her hostage for 18 years, and repeatedly sexually assaulting her, producing two children. For the 10 years prior to his arrest, Garrido was under the parole supervision of California's Department of Corrections and Rehabilitation (CDCR) which failed to discover either parole violations by Garrido or the existence of his victims. The discovery of the kidnapping victim and her children and the arrest of Garrido and his wife

generated extensive media coverage, with considerable focus on CDCR's parole supervision of Garrido. The Office of the Inspector General (OIG) conducted an investigation into CDCR's parole supervision and concluded CDCR failed to adequately classify and supervise Garrido and missed opportunities to discover the existence of his three victims.

The Sacramento Bee, KCRA-TV, and the San Francisco Chronicle made various requests under the California Public Records Act (CPRA) (Gov. Code, § 6250 et seq.) to CDCR and OIG for information relating to Garrido's parole. For the most part, these requests were denied. The Sacramento Bee, KCRA-TV and the San Francisco Chronicle petitioned the superior court for a writ of mandate to compel disclosure of documents relating to CDCR's parole supervision of Garrido. The superior court granted the petition and ordered CDCR and OIG to comply with the CPRA requests or to prepare a list of documents deemed privileged and submit it to the court for in camera review.

OIG and Inspector General David Shaw petitioned this court for an extraordinary writ and an immediate stay to compel the superior court to vacate its order compelling production of OIG's investigative files. We granted the immediate stay and issued an alternative writ of mandate. Petitioners contend the superior court erred in ordering disclosure. They contend the court (1) failed to interpret Penal Code section 6131, subdivision (c) properly; (2) failed to apply the exemption of Government Code section 6254, subdivision (f); (3) failed to conduct the proper balancing under Evidence Code section 1040; (4) erred in ordering peace officer personnel records be presented for in camera review; and (5) erred in ordering other privileged materials be presented for in camera review.

We grant the petition. We agree with petitioners' first and second contentions and find it unnecessary to consider the rest. We conclude that Penal Code section 6131, rather than requiring disclosure as the superior court found, gives the Inspector General complete discretion whether to disclose investigative materials underlying OIG's report. Government Code section 6254, subdivision (f), which exempts from disclosure under CPRA investigative files compiled for correctional purposes, is applicable to the underlying investigative materials at issue here. The superior court erred in ordering disclosure or in camera review of OIG's investigative materials.

## FACTUAL AND PROCEDURAL BACKGROUND

*Parole of Garrido*

In 1977, Garrido was convicted in federal court of kidnapping a woman and in Nevada state court of raping her. He was sentenced to 50 years in

federal prison for the kidnapping and five years to life in state prison for the rape. After he served 11 years of his federal sentence, the federal government paroled Garrido and transferred him to Nevada authorities to serve his sentence for rape. After eight months, Nevada paroled Garrido and returned him to federal parole authorities.

During this period, Garrido and his wife lived with Garrido's mother in Antioch, California. In 1991, while on federal parole, Garrido allegedly kidnapped a girl and brought her to the Antioch residence. In 1999, federal authorities terminated Garrido's parole, with a commendation for his positive response to parole supervision and his personal accomplishments. In 1999, because Garrido was living in California, CDCR assumed parole supervision of Garrido under the Interstate Compact for Adult Offender Supervision.

In August 2009, Garrido came to the attention of a University of California, Berkeley, police officer, who was alarmed by his peculiar behavior and the disquieting presence of two young girls. That contact led, eventually, to the discovery of Garrido's victims and the arrest of Garrido and his wife on various felony charges. Garrido is alleged to have kidnapped a young girl and to have held her hostage for 18 years. During that time, Garrido is alleged to have sexually assaulted the girl repeatedly, resulting in the birth of two daughters. The three victims were allegedly held in makeshift structures in the rear of the Antioch property.

*OIG Investigation and Report*

The case generated considerable media attention and OIG became aware of it. Pursuant to its authority under Penal Code section 6126, OIG conducted an investigation of CDCR's parole supervision of Garrido. OIG issued a public special report of its investigation in November 2009.

OIG's special report "shine[d] a public light on systemic problems that transcend Garrido's case and jeopardize public safety." The special report concluded CDCR failed to (1) adequately classify and supervise Garrido; (2) obtain key information from federal parole authorities; (3) properly supervise parole agents; (4) properly use GPS information, which gave the public a false sense of security about GPS monitoring; (5) take advantage of opportunities to determine Garrido was violating the terms of his parole; (6) refer Garrido for mental health assessment; (7) train parole agents to conduct parolee home visits; and (8) take advantage of opportunities to discover the existence of Garrido's three victims. With respect to the missed opportunities to discover the victims, the special report found CDCR failed to investigate clearly visible utility wires from Garrido's house to the concealed compound or the presence of a 12-year-old girl during a home visit; further,

CDCR failed to talk to neighbors or local police, or to act upon information clearly showing a parole violation.

*Media Requests for Information*

Almost immediately after Garrido's arrest, Sam Stanton, a reporter for The Sacramento Bee, submitted a CPRA request for information to CDCR. Stanton. sought access to Garrido's parole files, the names of his parole agents, records and dates of parole visits to Garrido's home and Garrido's visits to parole offices, records of parole searches, and written policies regarding the timing and frequency of parole visits. CDCR denied access to much of this information, except public portions of Garrido's parole file.

Lynsey Paulo, a reporter for KCRA-TV, made a similar request to CDCR under the CPRA. She requested the complete record of supervision of Garrido, records of any Penal Code section 290 sweeps of his residence, and information relating to any parole searches of Garrido and his property. CDCR denied the request, except for the public portion of Garrido's parole file, which had been released.

A reporter for the San Francisco Chronicle made an oral request to CDCR for CDCR's internal review of its supervision of Garrido. CDCR did not produce the document.

KCRA-TV also made a CPRA request to OIG for Garrido's parole file. OIG denied this request, but did release copies of the articles of incorporation of Garrido's corporation, "GODS Desire."

After OIG's special report was issued, Stanton made a CPRA request to OIG to review and copy "all documents, interviews, emails and correspondence received and generated" by OIG regarding the special report. The request was denied.

*The Petition for a Writ of Mandate*

These three media entities, The Sacramento Bee, KCRA-TV and the San Francisco Chronicle, petitioned the superior court for a writ of mandate to compel CDCR and OIG to disclose the records requested.

OIG opposed the petition, arguing all the records sought were specifically exempt from disclosure under the CPRA under various statutes. OIG also argued important public policy considerations mandated nondisclosure. OIG needed confidentiality in order to conduct its investigative operations.

*The Ruling*

The superior court issued a lengthy tentative decision. In determining whether the records sought were exempt from disclosure, the superior court construed each statutory exemption narrowly. It determined the records sought were not entirely exempt from disclosure. OIG and CDCR were directed to prepare a list, formatted as a privilege list, of those documents they asserted were exempt from disclosure as peace officer personnel records, confidential medical or psychological records, or criminal offender record information and the CDCR case management review. The list and the actual documents were to be presented to the court for in camera review. The court ordered OIG and CDCR to comply, by February 12, 2010, with the request for all documents not submitted for in camera review.

After oral argument, the court confirmed the tentative ruling.

*Petition for Extraordinary Writ and Immediate Stay*

On February 11, 2010, OIG and the Inspector General petitioned this court for an extraordinary writ and immediate stay of the superior court's order.[1] Petitioners sought to compel the superior court to vacate its order that required the disclosure of OIG's investigative files. This court granted an immediate stay. A few weeks later, this court issued an alternative writ.

## DISCUSSION

## I.

## Statutory Provisions Pertaining to OIG and CPRA

*OIG and the Inspector General*

OIG is an independent state entity responsible for overseeing CDCR. (Pen. Code, § 6125 et seq.) The Inspector General is appointed by the Governor, subject to confirmation, for a six-year term and may not be removed except for good cause. (Pen. Code, § 6125.) OIG reviews policies and procedures of CDCR and conducts audits and investigations of CDCR at the request of the Secretary of CDCR or a member of the Legislature, or at the initiation of the Inspector General. (Pen. Code, § 6126, subd. (a)(1).) OIG may also receive

---

[1] CDCR also petitioned for an extraordinary writ. (*California Dept. of Corrections and Rehabilitation v. Superior Court*, C064183.) This court denied the petition on March 1, 2010. The CPRA request to CDCR is not before the court in this proceeding.

communications from any individual, including employees of CDCR, involving improper governmental activity. (Pen. Code, § 6128, subd. (a).) "When appropriate, the Inspector General shall initiate an investigation or audit of any alleged improper governmental activity." (Pen. Code, § 6128, subd. (b).)

The broad power of OIG to conduct investigations includes access to and authority to examine books and records of CDCR and to conduct confidential interviews of any CDCR employee. (Pen. Code, § 6126.5.)

Upon completion of an investigation, the Inspector General "shall prepare a complete written report, which shall be held as confidential and disclosed in confidence, along with all underlying investigative materials the Inspector General deems appropriate, to the Governor, the Secretary of the Department of Corrections and Rehabilitation, and the appropriate director, chair, or law enforcement agency." (Pen. Code, § 6131, subd. (b).)

The Inspector General shall also prepare and release a public investigative report. (Pen. Code, § 6131, subd. (c).) "The public investigative report shall differ from the complete investigative report in the respect that the Inspector General shall have the discretion to redact or otherwise protect the names of individuals, specific locations, or other facts that, if not redacted, might hinder prosecution related to the investigation, or where disclosure of the information is otherwise prohibited by law, and to decline to produce any of the underlying investigative materials." (*Ibid.*)

It is the disclosure of the investigative materials underlying the special public report of CDCR's parole supervision of Garrido that is at issue in this case. As we explain, the broad authority of OIG to conduct investigations into alleged malfeasance in sensitive cases includes unfettered discretion to determine what investigative materials shall be withheld from the Governor, the Secretary of CDCR, other law enforcement officials and the public.

*Public Records Act*

In enacting the CPRA, "the Legislature, mindful of the right of individuals to privacy, finds and declares that access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state." (Gov. Code, § 6250.) The CPRA provides: "every person has a right to inspect any public record, except as hereafter provided." (Gov. Code, § 6253, subd. (a).) "In other words, all public records are subject to disclosure unless the Legislature has expressly provided to the contrary." (*Williams v. Superior Court* (1993) 5 Cal.4th 337, 346 [19 Cal.Rptr.2d 882, 852 P.2d 377].)

"With the passage of Proposition 59 effective November 3, 2004, the people's right of access to information in public settings now has state

constitutional stature, grounding the presumption of openness in civil court proceedings with state constitutional roots. (Cal. Const., art. I, § 3, subd. (b)(1)): 'The people have the right of access to information concerning the conduct of the people's business, and, therefore, the meetings of public bodies and the writings of public officials and agencies shall be open to public scrutiny.' " (*Savaglio v. Wal-Mart Stores, Inc.* (2007) 149 Cal.App.4th 588, 597 [57 Cal.Rptr.3d 215].) The constitutional provision further provides that statutes furthering the people's right of access shall be broadly construed, while statutes limiting the right of access are to be narrowly construed. (Cal. Const., art. I, § 3, subd. (b)(2).)

Government Code section 6254 sets forth a number of exemptions from disclosure under the CPRA. Under subdivision (f), no disclosure is required of records that are: "Records of complaints to, or investigations conducted by, or records of intelligence information or security procedures of, the office of the Attorney General and the Department of Justice, the California Emergency Management Agency, and any state or local police agency, or any investigatory or security files compiled by any other state or local police agency, or any investigatory or security files compiled by any other state or local agency for correctional, law enforcement, or licensing purposes." As explained below, we find that exemption applicable here.

## II.

### Under Penal Code Section 6131 the Inspector General Has Discretion Whether to Disclose Investigative Material

Petitioners contend Penal Code section 6131 gives the Inspector General complete discretion whether to disclose underlying investigative materials. They contend the superior court misconstrued that section in determining that such materials were not exempt from disclosure.

█ In general, "all books, papers, records, and correspondence of [OIG] pertaining to its work are public records subject to" CPRA. (Pen. Code, § 6126.3, subd. (b).) Specific exemptions to this general rule are set forth in subdivision (c)(1) of Penal Code section 6126.3. Among the exemptions are "[a]ll reports, papers, correspondence, memoranda, electronic communications, or other documents that are otherwise exempt from disclosure pursuant to the provisions of . . . subdivision (a) or (b) of Section 6131 . . . ." (*Ibid.*)

Penal Code section 6131, subdivision (a) involves audits by OIG. It requires OIG to disclose a written report, "along with all underlying materials the Inspector General deems appropriate," to the Governor, the Secretary of CDCR and others. Copies of the report are to be posted on OIG's Web site

within 10 days. Since the written report is made public, the only documents that could be exempt from disclosure under this subdivision are the underlying materials that the Inspector General decides to withhold from disclosure.

■ Penal Code section 6131, subdivision (b) provides: "Upon the completion of any investigation conducted by the Inspector General, he or she shall prepare a complete written report, which shall be held as confidential and disclosed in confidence, along with all underlying investigative materials the Inspector General deems appropriate, to the Governor, the Secretary of the Department of Corrections and Rehabilitation, and the appropriate director, chair, or law enforcement agency." Under this subdivision, the complete report is "held as confidential and disclosed in confidence" and is not subject to disclosure under CPRA. (Pen. Code, § 6126.3, subd. (c).) Further, the Inspector General may determine which underlying investigative materials are to be exempt from disclosure to the Governor and other officials. Thus, while there is no express declaration in Penal Code section 6126.3, subdivision (c) that the underlying investigative reports are not public records, by giving the Inspector General complete discretion to withhold them, the Legislature gave the Inspector General authority to determine which underlying investigative materials, if any, should be disclosed to anyone. This is the same discretionary power to withhold underlying investigative materials that the Inspector General has under subdivision (a).

The superior court found this exemption did not apply because subdivision (b) of Penal Code section 6131 had to be read in conjunction with subdivision (c) of the same section. Subdivision (c) of Penal Code section 6131 provides in part as follows: "Upon the completion of any investigation conducted by the Inspector General, he or she shall also prepare and issue on a quarterly basis, a public investigative report that includes all investigations completed in the previous quarter. The public investigative report shall differ from the complete investigative report in the respect that the Inspector General shall have the discretion to redact or otherwise protect the names of individuals, specific locations, or other facts that, if not redacted, might hinder prosecution related to the investigation, or where disclosure of the information is otherwise prohibited by law, and to decline to produce any of the underlying investigative materials. In a case where allegations were deemed to be unfounded, all applicable identifying information shall be redacted."

The remainder of subdivision (c) of Penal Code section 6131 outlines when the public investigative report shall be made available to the public. It also specifies for different situations what additional information, such as a State Personnel Board order, settlement information or a decision not to pursue disciplinary or criminal proceedings, must be attached to the public investigative report on OIG's Web site. (Pen. Code, § 6131, subd. (c)(1)–(6).)

The statute does not, in any situation, require attaching the underlying investigative materials to the public investigation report. (*Ibid.*)

The superior court interpreted Penal Code section 6131 to permit the Inspector General to withhold underlying investigative materials from disclosure under either subdivision (b) or (c) only if their disclosure might hinder prosecution or is otherwise prohibited by law. In so construing Penal Code section 6131, the superior court erred.

■ "Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose." (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737 [21 Cal.Rptr.3d 676, 101 P.3d 563].) In the first step, we "examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend." (*Id.* at p. 737.)

■ A plain, commonsense interpretation of subdivision (c) of Penal Code section 6131 indicates the public report of an OIG investigation differs from the complete report given to the Governor and other officials in two respects. First, the Inspector General may "redact or otherwise protect" the names of individuals, specific locations or other facts if their disclosure "might hinder prosecution." The Inspector General may also redact this information where disclosure "is otherwise prohibited by law." The second difference between the public report and the complete report is that with respect to the public report, the Inspector General has discretion "to decline to produce any of the underlying investigative materials."

As the syntax of the subdivision indicates, the qualifying phrase "might hinder prosecution," modifies only the Inspector General's discretion to redact certain identifying information; it does not modify the Inspector General's complete discretion to withhold all underlying investigative materials.

Real parties in interest, the media companies, contend the superior court correctly found that the discretion to withhold underlying investigative materials was modified by whether such disclosure "might hinder prosecution." They contend petitioners' construction is inconsistent with the last antecedent rule. We disagree.

"A longstanding rule of statutory construction—the 'last antecedent rule'— provides that 'qualifying words, phrases and clauses are to be applied to the

words or phrases immediately preceding and are not to be construed as extending to or including others more remote.' [Citations.]" (*White v. County of Sacramento* (1982) 31 Cal.3d 676, 680 [183 Cal.Rptr. 520, 646 P.2d 191].) As applied here, this rule of statutory construction confirms that the qualifying phrase "might hinder prosecution" applies only to the immediately preceding phrase that gives the Inspector General discretion to redact or otherwise protect certain identifying information; it does not extend to the more remote phrase giving the Inspector General discretion "to decline to produce any of the underlying investigative materials."

The interpretation advanced by petitioners also comports with the statutory framework as a whole. (See *Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224] [a particular clause or section should be considered in the context of the statutory framework as a whole].) Under both subdivisions (a) and (b) of Penal Code section 6131, the Inspector General has discretion as to what underlying investigative materials are disclosed to the Governor and other officials. The Inspector General's reports for both audits and investigations shall include all underlying investigative materials the Inspector General deems appropriate. (Pen. Code, § 6131, subds. (a) & (b).) Under subdivision (b), the complete investigative report "shall be held as confidential and disclosed in confidence."

The interpretation advanced by real parties in interest would require the public disclosure of material the Legislature has deemed confidential and grant the public access to underlying investigative materials as to which the Legislature has expressly given the Inspector General discretion to withhold from the Governor, the Secretary of CDCR, and other law enforcement officials who are in a position to act upon the Inspector General's findings. We reject an interpretation of a statute that leads to absurd results.[2] (See *Big Creek Lumber Co. v. County of Santa Cruz* (2006) 38 Cal.4th 1139, 1156 [45 Cal.Rptr.3d 21, 136 P.3d 821] [rejecting interpretation of timber statute because it "could lead to absurd results"].)

Further, the statutory framework reveals the confidential nature of OIG investigative materials. Penal Code section 6126.3, subdivision (c) provides that the complete investigative report of Penal Code section 6131, subdivision (b) is not a public record. The same subdivision also provides

---

[2] Real parties in interest request this court take judicial notice of a senate floor analysis of Senate Bill No. 1352 (2003–2004 Reg. Sess.), which added Penal Code section 6131, and ballot materials concerning Proposition 59. Because we have not found the statutory language ambiguous, we have no need to resort to extrinsic aids and deny the request. (*People v. Farell* (2002) 28 Cal.4th 381, 394 [121 Cal.Rptr.2d 603, 48 P.3d 1155].)

that confidential interviews with CDCR employees and identifying information of persons initiating an investigation into improper government activity are not public records unless, in the case of the latter, disclosure is necessary in the interests of justice.

The confidentiality of OIG's work is emphasized in Penal Code section 6126.4. That section makes it a misdemeanor "to divulge or make known in any manner not expressly permitted by law to any person not employed by the Inspector General any particulars of any record, document, or information the disclosure of which is restricted by law from release to the public."

Although the Legislature did not specify in Penal Code section 6126.3 that underlying investigative materials are not public records, it did expressly grant the Inspector General unfettered discretion as to the disclosure of such materials. Penal Code section 6131, subdivision (b) grants the Inspector General discretion whether to disclose such materials to the Governor and other officials along with the complete report of the investigation; the complete report shall include "all underlying investigative materials the Inspector General deems appropriate." Penal Code section 6131, subdivision (c) expressly permits the Inspector General, with respect to the public report, "to decline to produce any of the underlying investigative materials." Construing these statutes to require OIG and the Inspector General to disclose the underlying investigative materials pursuant to a CPRA request would render those provisions giving the Inspector General discretion over disclosure of such materials mere surplusage and of no effect. We decline to adopt an interpretation that reads words out of the statute, because it is counter to basic rules of statutory construction.

It is a maxim of statutory construction that "Courts should give meaning to every word of a statute if possible, and should avoid a construction making any word surplusage." (*Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 22 [56 Cal.Rptr.2d 706, 923 P.2d 1].) Under general rules of statutory interpretation, an interpretation which has the effect of making statutory language null and void is to be avoided. (*People v. Woodhead* (1987) 43 Cal.3d 1002, 1010 [239 Cal.Rptr. 656, 741 P.2d 154]; *Prager v. Isreal* (1940) 15 Cal.2d 89, 93 [98 P.2d 729].)

■ We find clear legislative intent in Penal Code section 6131 that investigative materials underlying a report of OIG are to be disclosed only in the discretion of the Inspector General, without a requirement that such materials may be withheld only if disclosure would hinder prosecution or otherwise violate the law. In concluding otherwise, the superior court erred.

## III.

### Investigative Files Are Exempt from Disclosure Under Government Code Section 6254, Subdivision (f)

█ Given the strong public policy of the people's right to information concerning the people's business (Gov. Code, § 6250), and the constitutional mandate to construe statutes limiting the right of access narrowly (Cal. Const., art. I, § 3, subd. (b)(2)), "all public records are subject to disclosure unless the Legislature has *expressly* provided to the contrary." (*Williams v. Superior Court, supra,* 5 Cal.4th at p. 346, italics added.) Petitioners contend Government Code section 6254, subdivision (f) provides an express exemption from disclosure under CPRA for investigative files. They contend the superior court erred in failing to apply that exemption.

█ Under Government Code section 6254, subdivision (f), no disclosure is required of records that are: "Records of complaints to, or investigations conducted by, or records of intelligence information or security procedures of, the office of the Attorney General and the Department of Justice, the California Emergency Management Agency, and any state or local police agency, or any investigatory or security files compiled by any other state or local police agency, or any investigatory or security files compiled by any other state or local agency for correctional, law enforcement, or licensing purposes."

█ The investigation materials underlying the report of OIG fall within this exemption. They are investigatory files compiled by a state agency for correctional purposes. (Gov. Code, § 6254, subd. (f).) Information in public files is exempt as investigatory material only when the prospect of enforcement proceedings is concrete and definite. (*Williams v. Superior Court, supra,* 5 Cal.4th at p. 356.) The prospect of enforcement must appear when the investigatory file is created. (*Id.* at p. 359.) The exemption for investigatory files "does not terminate with the conclusion of the investigation. Once an investigation . . . has come into being because there is a concrete and definite prospect of enforcement proceedings at that time, materials that relate to the investigation and, thus, properly belong in the file, remain exempt subject to the terms of the statute." (*Id.* at pp. 361–362.)

Here OIG launched an investigation into the parole supervision of Garrido by CDCR, a very high profile case. OIG's task was to determine whether CDCR's parole policies were adequate and whether they were followed in this instance. Accordingly, the prospect of enforcement proceedings was

concrete and definite when the investigation was launched. Indeed, Penal Code section 6131 contemplates referring investigations for disciplinary action or possible criminal prosecution. (Pen. Code, § 6131, subd. (c)(1) & (4).)

This is not a situation like that presented in *Uribe v. Howie* (1971) 19 Cal.App.3d 194 [96 Cal.Rptr. 493]. There, a farmworker who had physical disorders she suspected were caused by crop pesticides sought permission to inspect monthly pesticide spray reports. The trial court found the reports exempt under Government Code section 6254, subdivision (f) as investigatory files compiled for correctional, law enforcement or licensing purposes. (*Uribe v. Howie, supra*, at p. 212.) The appellate court disagreed. While the spray reports may have been used in reviewing licenses, that was not the primary purpose for which they were compiled, nor were they currently being put to that use. (*Id.* at p. 213.) Here, by contrast, the materials real parties in interest seek were compiled and used primarily, if not exclusively, in the conduct of OIG's investigation of CDCR.

■ Real parties in interest do not challenge the nature of the materials as exempt under Government Code section 6254, subdivision (f). Rather, they contend that subdivision does not apply because Penal Code section 6131 is a more specific statute addressing OIG investigative materials and it requires disclosure. As discussed above, we reject an interpretation of Penal Code section 6131 that requires public disclosure of underlying investigative materials unless a showing is made that disclosure would hinder prosecution or violate the law. Instead, we find disclosure is entrusted to the discretion of the Inspector General. Thus, with respect to underlying investigative materials, Penal Code section 6131 and Government Code section 6254, subdivision (f) are consistent, and disclosure is not required under CPRA.

Since we find the underlying investigative materials are exempt from disclosure under CPRA pursuant to Government Code section 6254, subdivision (f), we need not address petitioners remaining contentions that assert other exemptions from disclosure.

## DISPOSITION

The alternative writ is discharged. The petition for a peremptory writ of mandate is granted. The Superior Court of Sacramento County is directed to set aside its order of February 5, 2010, compelling OIG and the Inspector General to disclose investigative files to The Sacramento Bee, KCRA-TV, and

the San Francisco Chronicle or produce files to the superior court for in camera review. The stay previously issued by this court shall be dissolved as of the date this opinion is final. OIG and the Inspector General shall recover costs. (Cal. Rules of Court, rule 8.493(a)(1)(A).)

Blease, Acting P. J., and Hull, J., concurred.