Filed 12/22/17; Certified for Publication 1/22/18 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THOMAS LIPPMAN,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CITY OF OAKLAND,<br><br>    Defendant and Respondent. | A141865<br><br>(Alameda County<br>Super. Ct. No. RG12657623) |

Plaintiff Thomas Lippman sought a writ of mandate (Code Civ. Proc., § 1085)[1] to compel defendant City of Oakland (City) to have an appeals board or the governing body of the City review his citations for blight and substandard living conditions on his rental property. Lippman claimed the City violated the California Building Code (Cal. Code Regs., tit. 24, § 1.8.8) (Building Code) by having a single hearing officer, who had been appointed by the very entity that cited him, hear his claims. The trial court determined the City's administrative appeals process complied with the Building Code. We disagree and will reverse.

---

[1] Lippman also filed a petition for administrative mandamus (Code Civ. Proc., § 1094.5), challenging the substance of the citations. The instant appeal is limited to Lippman's challenge to the City's administrative appeals process under traditional mandamus. (*Id.* § 1085.)

# I.    BACKGROUND

Lippman owns rental property in the City.  In 2009 and 2010, the City's Building Services Department (Building Services) cited Lippman for blight and substandard living conditions on the property.  He disputed the citations and eventually sought administrative review.

In April and June 2012, a hearing officer appointed by Building Services heard Lippman's appeals.  The hearing officer received testimony from Lippman and various City representatives.  After receiving oral testimony and reviewing the relevant notices and invoices, the hearing officer found that Lippman was (or had been) in violation of various City ordinances for each of the citations.  The hearing officer further found that the testimony of the witnesses, as well as Lippman, supported a finding that the property was blighted in 2009 and abatement did not occur until after fees were assessed.  The hearing officer found that the testimony of the witnesses, including Lippman, supported a finding that the substandard living conditions inside the property had not been abated.  Lippman's appeals were denied.

After receiving the appeal decisions from the hearing officer, Lippman filed the underlying writ petition.  In the petition, he alleged, among other things, that his appeals should have been heard before the city council or an appeals board instead of a single hearing examiner.

The parties briefed the merits of the petition.  After hearing the arguments of the parties, the trial court requested supplemental briefing on one issue—whether there is a conflict between the Oakland Municipal and Planning Codes (OMPC) section 15.08.410 et seq. and the 2010 Building Code section 1.8.8.1.  If a conflict existed, the trial court asked whether the matter at issue in the petition was a "municipal affair" subject to regulation by the City or one of "statewide concern" subject to regulation by the state.

The trial court held another hearing and took the matter under submission.  After further consideration, the trial court granted the petition in part.  As to the administrative writ seeking review of the blight citations, the writ was granted, the appeal decision was set aside, and the City was directed to either refund the fees Lippman paid on these

citations or hold a new administrative hearing on the blight citations only. The City elected to notice a new administrative hearing on these citations. As to the administrative writ seeking review of the substandard living conditions citation, the writ was denied.

As to the traditional writ seeking to compel the City to hear administrative appeals before the city council or an appeals board pursuant to the Building Code, the writ was denied. The trial court issued a decision stating that, inter alia, "the relevant provisions of the State Housing Law and State Building Code, although not free of ambiguity, do not bar a city from authorizing its enforcement agency to resolve such appeals by appointing a hearing examiner to decide them." The trial court determined it did not have to reach the "difficult constitutional question" of whether the underlying issue was a matter of "statewide concern" where state law would regulate the City's activity because it found no conflict existed in the first instance.

Lippman filed this appeal, challenging only the denial of his petition seeking traditional mandamus. Specifically, his appeal is limited to the issue of whether the City's current administrative appeal process for deciding appeals from Building Services citations conflicts with the Building Code and, if a conflict exists, whether the matter at issue is a "municipal affair" governed by the City's municipal code or one of "statewide concern" governed by the Building Code.

## II.    DISCUSSION

In determining whether the trial court erred in denying Lippman's petition for writ of mandate, we first must determine whether there is a conflict between the City's municipal code and the 2010 Building Code. If such a conflict exists, we must decide whether Lippman's petition involves a "municipal affair" subject to regulation by the City or one of "statewide concern" subject to regulation by the state. In resolving these questions, we are guided by established principles of law.

### A.    *Standard of Review*

" 'A traditional writ of mandate under Code of Civil Procedure section 1085 is a method for compelling a public entity to perform a legal and usually ministerial duty.' " (*American Federation of State, County & Municipal Employees v. Metropolitan Water*

*District* (2005) 126 Cal.App.4th 247, 261.) "In reviewing a trial court's judgment on a petition for writ of ordinary mandate, . . . we exercise our independent judgment on legal issues, such as the interpretation of statutory . . . provisions." (*Kreeft v. City of Oakland* (1998) 68 Cal.App.4th 46, 53.)

In interpreting a statute, "[w]e begin as always 'with the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent.' [Citation.] To discover that intent we first look to the words of the statute, giving them their usual and ordinary meaning. [Citations.] 'Where the words of the statute are clear, we may not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history.' " (*Trope v. Katz* (1995) 11 Cal.4th 274, 280.)

### B.      *Principles of Local Government Law*

Oakland is a charter city for purposes of "home rule" authority. (Cal. Const., art. XI, § 5, subd. (a).) A charter city " 'ha[s] exclusive power to legislate over "municipal affairs." ' " (*Cawdrey v. City of Redondo Beach* (1993) 15 Cal.App.4th 1212, 1218, citing *Fisher v. City of Berkeley* (1984) 37 Cal.3d 644, 704.) The home rule represents "an 'affirmative constitutional grant to charter cities of "all powers appropriate for a municipality to possess . . ." and [includes] the important corollary that "so far as 'municipal affairs' are concerned," charter cities are "supreme and beyond the reach of legislative enactment." ' " (*State Building & Construction Trades Council of California v. City of Vista* (2012) 54 Cal.4th 547, 556 (*State Building*).) But "as to matters of statewide concern, charter cities remain subject to state law. (*Bishop v. City of San Jose* (1969) 1 Cal.3d 56, 61–62 [citations].)" (*Sonoma County Organization of Public Employees v. County of Sonoma* (1979) 23 Cal.3d 296, 315–316.)

The relevant case law has identified the steps we must take in resolving this controversy. "First, a court must determine whether there is a genuine conflict between a state statute and a municipal ordinance. [Citations.] Only after concluding there is an actual conflict should a court proceed with the second question; i.e., does the local legislation impact a municipal or statewide concern?" (*Barajas v. City of*

*Anaheim* (1993) 15 Cal.App.4th 1808, 1813; see also *Associated Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 364; *Rider v. City of San Diego* (1998) 18 Cal.4th 1035, 1054.)  Finally, if a genuine conflict is presented and the state statute qualifies as a matter of statewide concern, "we next consider whether it is both (i) reasonably related to the resolution of that concern, and (ii) 'narrowly tailored' to limit incursion into legitimate municipal interests."  (*Johnson v. Bradley* (1992) 4 Cal.4th 389, 404, 406, fn. 17.)

### C.     *The municipal code conflicts with the Building Code.*

Lippman argues the City's appeals process before a single hearing officer conflicts with the procedures set forth in the Building Code.  We agree.

#### 1.     *State Law*

The State Housing Law (Health & Saf. Code, § 17910 et seq.) provides statewide construction and occupancy standards for buildings used for human habitation.  The State Housing Law incorporates into state law the Building Code, as well as various uniform codes, including the Uniform Housing Code.  (*Id.* § 17922.)  The State Housing Law, the building standards published in the Building Code, and rules and regulations promulgated therein "apply in all parts of the state" to apartment houses, hotels, motels, and dwellings, and buildings and structures accessory thereto.  (*Id.* § 17950.)

At issue in this appeal is section 1.8.8 of the 2010 Building Code, entitled "**APPEALS BOARD**," and it provides as follows:

"**1.8.8.1 General.**  Every city, county, or city and county shall establish a process to hear and decide appeals of orders, decisions and determinations made by the enforcing agency relative to the application and interpretation of this code and other regulations governing use, maintenance and change of occupancy.  The governing body of any city, county, or city and county may establish a local appeals board and a housing appeals board to serve this purpose.  Members of the appeals board(s) shall not be employees of the enforcing agency and shall be knowledgeable in the applicable building codes, regulations and ordinances as determined by the governing body of the city, county, or city and county.

"Where no such appeals boards or agencies have been established, the governing body of the city, county, or city and county shall serve as the local appeals board or housing appeals board as specified in California Health and Safety Code Sections 17920.5 and 17920.6.[2]

"**1.8.8.2 Definitions.** The following terms shall for the purposes of this section have the meaning shown.

"**HOUSING APPEALS BOARD.** The board or agency of a city, county or city and county which is authorized by the governing body of the city, county or city and county to hear appeals regarding the requirements of the city, county or city and county relating to the use, maintenance and change of occupancy of buildings and structures, including requirements governing alteration, additions, repair, demolition and moving. In any area in which there is no such board or agency, "Housing appeals board" means the local appeals board having jurisdiction over the area.

"**LOCAL APPEALS BOARD.** The board or agency of a city, county or city and county which is authorized by the governing body of the city, county or city and county to hear appeals regarding the building requirements of the city, county or city and county. In any area in which there is no such board or agency, "Local appeals board" means the governing body of the city, county or city and county having jurisdiction over the area.

"**1.8.8.3 Appeals.** Except as otherwise provided in law, any person, firm or corporation adversely affected by a decision, order or determination by a city, county or city and county relating to the application of building standards published in the

---

[2] Health and Safety Code section 17920.5 defines a "local appeals board" in terms identical to Building Code section 1.8.8.2. Health and Safety Code section 17920.6 defines "housing appeals board" as "the board or agency of a city or county which is authorized by the governing body of the city or county to hear appeals regarding the requirements of the city or county relating to the use, maintenance, and change of occupancy of hotels, motels, lodginghouses, apartment houses, and dwellings, or portions thereof, and buildings and structures accessory thereto, including requirements governing alteration, additions, repair, demolition, and moving of such buildings if also authorized to hear such appeals. In any area in which [there] is not such a board or agency, 'housing appeals board' means the local appeals board having jurisdiction over such area."

California Building Standards Code, or any other applicable rule or regulation adopted by the Department of Housing and Community Development, or any lawfully enacted ordinance by a city, county or city and county, may appeal the issue for resolution to the local appeals board or housing appeals board as appropriate.

"The local appeals board shall hear appeals relating to new building construction and the housing appeals board shall hear appeals relating to existing buildings." (2010 Building Code, § 1.8.8.)

### 2. Oakland Municipal and Planning Codes

The City's municipal code authorizes the city manager to set standards and procedures for holding administrative hearings "to adjudicate the issuance of administrative citations . . . ." (OMPC, § 1.12.080(A).) The municipal code further states, "In all instances, the determination regarding administrative citations resulting from the administrative hearing shall be final and conclusive." (OMPC, § 1.12.080(C).)

Municipal code section 15.04.1.125 states that a property owner may request an administrative hearing with a "Hearing Examiner" in order to "hear and decide appeals of orders, decisions, or determinations made by the Building Official relative to the application and interpretation of the non-administrative (technical) requirements of this Code . . . ." (OMPC, § 15.04.1.125(A); former OMPC, § 15.04.025(A).)

Municipal code sections 15.08.410 et seq. outline the specific administrative hearing procedures used for building maintenance code violations. They establish the process for requesting a hearing, scheduling a hearing before the "Hearing Examiner," and determining what matters or issues will be considered. (OMPC, §§ 15.08.410, 15.08.420, 15.08.430.) When a property owner requests an appeal from a decision of the Building Official, the Building Official is required to fix the date, time, and place for the hearing of the appeal by the Hearing Examiner. (OMPC, § 15.08.410(B).) "Decisions made and

determinations rendered by the Hearing Examiner shall be in all cases final and conclusive." (OMPC, § 15.08.450.)

        *3.     Analysis*

The City contends there is no conflict between the municipal code and the Building Code, as the latter requires only the establishment of "process" to hear and decide appeals, which does not require an "appeals board." We disagree.

"The fundamental task of statutory construction is to ascertain legislative intent so as to effectuate the purpose of the law." (*People v. Mejia* (2012) 211 Cal.App.4th 586, 611.) In doing so, courts should look to the plain meaning of the statutory language. (*Ibid.*) Where the intent is clear from the language itself, the court will not look beyond the plain meaning. (*Stephens v. County of Tulare* (2006) 38 Cal.4th 793, 802.) Where there are conflicting interpretations, courts should avoid interpreting statutes in a way that "has the effect of making statutory language null and void . . . ." (*Office of Inspector General v. Superior Court* (2010) 189 Cal.App.4th 695, 708.)

We read the plain language of Building Code section 1.8.8.1 as mandating that local governments establish an appellate process, which may be satisfied in one of three ways: (1) by creating a local appeals board for new construction and a housing appeals board for existing buildings; (2) by creating an agency authorized to hear such appeals; or (3) by having the governing body of the city serve as the local appeals board or housing appeals board. Notably, however, the Building Code does not contemplate an appeal before a single hearing officer. Rather, the Building Code refers to an "appeals board." (Building Code, § 1.8.8.1.) A "local appeals board" is defined as "the *board or agency* of a city or county which is *authorized* by the governing body of the city or county *to hear appeals* regarding the building requirements of the city or county." (Health & Saf. Code, § 17920.5, italics added; see also Building Code, § 1.8.8.2.) The Building Code section explains, "In any area in which there is no such board or agency, 'Local appeals board' means the governing body of the city, county or city and county having jurisdiction over the area." (Building Code, § 1.8.8.2; see also Health & Saf. Code, § 17920.5.) Thus, a city council or board of supervisors may be considered the local appeals board. Further,

the local appeals board or governing body may act as the "housing appeals board." (Building Code, § 1.8.8.2; Health & Saf. Code, § 17920.6.) Consequently, at minimum, there is a mandatory duty to establish a local appeals board or an agency authorized to hear appeals. And, if no such board or agency exists, the governing body shall act as the local appeals board.

Prior versions of the Building Code support this interpretation. Up until 2010, the Building Code provided, "Every city, county or city and county *shall establish a local appeals board and a housing appeals board.* The local appeals board and housing appeals board shall each be comprised of at least five voting members that shall serve at the pleasure of the city, county or city and county. Appointments shall not be employees of the jurisdiction and shall consist of members who are qualified and specifically knowledgeable in the California Building Standards Codes [*sic*] and applicable local ordinances." (See 2007 Building Code, § 108.8.1, italics added; see also 2001 Building Code, § 105.1 ["there shall be and is hereby created a board of appeals consisting of members who are qualified by experience and training"]; 1998 Building Code, § 105.1 [same].)[3]

The 2010 Building Code differs from former versions in three respects. The 2010 Building Code provides that every city "shall establish a *process* to hear and decide appeals" instead of stating that every city "shall establish a local appeals board and a housing appeals board." (Compare 2010 Building Code, § 1.8.8.1, italics added, with 2007 Building Code, § 108.1; 2001 Building Code, § 105.1; 1998 Building Code, § 105.1.) The 2010 Building Code no longer specifies the minimum number of voting members of the appeal boards, but does state that members "shall not be employees of the enforcing agency. . . ." (2010 Building Code, § 1.8.8.1.) The 2010 Building Code also

---

[3] Appendix B of the 2010 Building Code contains similar language pertaining to the qualifications of members of an appeals board. (2010 Building Code, appen. B at p. 675.) However, the provisions in this appendix are not mandatory unless specifically referenced in the adopting ordinance. According to the Matrix Adoption Table, Appendix B was not adopted by the state agencies. (*Id.* at p. 673.)

mandates: "Where no such appeals boards or agencies have been established, the governing body of the city, county, or city and county shall serve as the local appeals board or housing appeals board as specified in California Health and Safety Code Sections 17920.5 and 17920.6." (2010 Building Code, § 1.8.8.1.) In our view, these amendments clarify that the "process" that is contemplated requires review by an appeals board, an agency, or a governing body.

Nevertheless, the City maintains that its process for handling appeals does not conflict with state law because the references to an "agency" in the State Housing Law and the Building Code suggest that the reviewing body need not be an entity distinct from its enforcement agency. The City argues that nothing in the State Housing Law or Building Code indicates that an agency authorized to hear appeals cannot be the enforcement agency itself. However, the plain language of the 2010 Building Code prohibits employees of the enforcing agency from serving as members of the appeals board. (2010 Building Code, § 1.8.8.1.) The City contends that because the Hearing Officer is not an employee of the enforcing agency, there is no conflict. The City's position appears to be that the enforcing agency is authorized to hear appeals so long as it does not utilize any of its employees. This argument not only requires a strained interpretation of the statutory scheme as a whole, it also requires that we read the word "agency" to mean the enforcement agency acting through a non-employee of that agency. This would violate " 'the cardinal rule of statutory construction that courts must not add provisions to statutes. [Citations.] This rule has been codified in California as [Code of Civil Procedure] section 1858, which provides that a court must not "insert what has been omitted" from a statute.' " (*People v. Guzman* (2005) 35 Cal.4th 577, 587.) We decline the invitation to construe the reference to an "agency" in section 1.8.8.1 to include a single hearing examiner selected by the very enforcement agency whose decision is being appealed.

In fact, the legislative history indicates the exact opposite—that an appeal should exist outside the enforcement agency. In 1961, the Legislature repealed the State Housing Act (former Health and Safety Code sections 15000–17902) and enacted the

existing State Housing Law.  (See 41 Ops.Cal.Atty.Gen. 182, 183 (1963); Assem. Bill No. 787 (1961 Reg. Sess.) § 7 et seq.)  The 1961 legislation created two new procedures: review by a local appeals board and review by a state housing appeals board. (41 Ops.Cal.Atty.Gen. 182, 183 (1963).)  Although there was some initial confusion regarding the relationship between the local appeals board and the state appeals board, Assembly Bill No. 787 expressly and consistently differentiated between the appeals boards and the enforcement agencies.  (See Assem. Bill No. 787 (1961 Reg. Sess.) as introduced Jan. 25, 1961; Alexander H. Pope, bill mem. to Governor Brown (1961 Reg. Sess.) July 14, 1961, Governor's chaptered bill files, ch. 1844, pp. 1–3; Stats. 1961 ch. 1844, § 7 et seq., pp. 3919–3927.)  The bill provided for "local agency appeal bodies" that were separate from the "enforcement agencies," which were authorized to inspect buildings and issue citations.  (See Alexander H. Pope, bill mem. to Governor Brown (1961 Reg. Sess.) July 14, 1961, Governor's chaptered bill files, ch. 1844, pp. 1, 3; Stats. 1961, ch. 1844, § 8, pp. 3920, 3923–3924.)  The intent to have separate reviewing and enforcing bodies is clearly reflected in the 1977 amendments to the State Housing Law, which added, among other things, a housing appeals board.  (Sen. Bill No. 1072 (1977 Reg. Sess.) § 2 et seq.).  In recommending Senate Bill No. 1072, the Department of Housing and Community Development reported that "[s]ome accessible appeal . . . should exist outside the enforcement agency."  (Cal. Dept. of Housing and Community Development, Enrolled Bill Rept. on Sen. Bill No. 1072 (1977 Reg. Sess.), Sept. 13, 1977, p. 2.)  It was further reported that the "bill represent[ed] a sound step towards making the building codes less arbitrary and more responsive to the shelter needs of California's citizens."  (*Ibid.*)

The City's process of authorizing an appeal to a single hearing officer appointed by the enforcement agency is contrary to the plain language of the State Housing Law and the Building Code and is inconsistent with the legislative intent.  Accordingly, we conclude the municipal code conflicts with state law to the extent it provides for an appeals process inconsistent with the mechanism mandated by the Building Code and State Housing Law.

### D.	There is a statewide interest in uniform building codes.

The City contends that its right to "home rule" overrides the Building Code and its related statutory scheme.  We disagree.

"[T]he constitutional concept of municipal affairs is not a fixed or static quantity. It changes with the changing conditions upon which it is to operate.  What may at one time have been a matter of local concern may at a later time become a matter of state concern controlled by the general laws of the state." (*Pac. Tel. & Tel. Co. v. City & County of S.F.* (1959) 51 Cal.2d 766, 771.)  "Some portions of a local matter may ultimately become of general state interest." (*Weekes v. City of Oakland* (1978) 21 Cal.3d 386, 423.)

"There must always be doubt whether a matter which is of concern to both municipalities and the state is of sufficient statewide concern to justify a new legislative intrusion into an area traditionally regarded as 'strictly a municipal affair.'  Such doubt, however, 'must be resolved in favor of the legislative authority of the state.' " (*Baggett v. Gates* (1982) 32 Cal.3d 128, 140 (*Baggett*).)

"[T]he question whether in a particular case the home rule provisions of the California Constitution bar the application of state law to charter cities turns ultimately on the meaning and scope of the state law in question and the relevant state constitutional provisions.  Interpreting that law and those provisions presents a legal question, not a factual one." (*State Building*, *supra*, 54 Cal.4th at p. 558.)[4]

"Until the 1970's, every city and county in California adopted its own building code, unfettered by mandated state standards or state control.  (*City of Bakersfield v. Miller* (1966) 64 Cal.2d 93, 97 [citations].)  In 1970, the Legislature put an end to all that by declaring a statewide interest in uniform building codes (Stats. 1970, ch. 1436, § 7, p. 2785) and otherwise expressing an intent to generally preempt the field.  (*Baum Electric Co. v. City of Huntington Beach* (1973) 33 Cal.App.3d 573, 577 [citation]; see

---

[4] In this regard, Lippman's reliance on the grand jury report allegedly criticizing the City's appeals process is misplaced.  On Lippman's request, we took judicial notice of the 2011 grand jury report, but we did not make a determination as to its relevance.

also *Danville Fire Protection Dist.* v. *Duffel Financial & Constr. Co.* (1976) 58 Cal.App.3d 241, 248 [citation].) But that is not to say that local authorities may never adopt ordinances which vary from the uniform codes." (*ABS Institute v. City of Lancaster* (1994) 24 Cal.App.4th 285, 288.)

That the Legislature intended to preempt this field generally is illustrated by the fact that it carefully specified the limited circumstances under which local authorities may adopt ordinances that vary from the state statutes and regulations. As the court in *Briseno v. City of Santa Ana* (1992) 6 Cal.App.4th 1378 (*Briseno*) explained, we may infer the Legislature intended to occupy the field "because it has prescribed the manner in which local authorities can adopt ordinances which vary from the uniform codes." (*Id.* at p. 1382.) For example, Health and Safety Code section 17958.5 allows local governments to amend the uniform codes by enacting more restrictive ordinances if they are justified by local climatic, geological, or topographical conditions. "[I]t makes little sense to prescribe a narrow set of circumstances in which local entities can override state law if those entities are already free to [do so] with impunity." (*Briseno*, at p. 1383.)

Because the state has delineated specifically where and in what manner local authorities may "adopt ordinances which vary from the uniform codes," we conclude the Legislature intended to preempt local government's power to legislate in the field of housing building standards, except as specifically permitted by state statutes. (*Briseno*, *supra*, 6 Cal.App.4th at pp. 1382–1383; see Health & Saf. Code, §§ 17958.5, 17958.7, subd. (a) [permitting localities to amend building standards based on local climatic, geological, or topographical conditions, but requiring local governments to make specific findings to do so]; Health & Saf. Code, § 17922, subd. (c) [reserving to local jurisdictions power over "local use zone requirements, local fire zones, building setback, side and rear yard requirements, and property line requirements"]; Health & Saf. Code, § 17951, subd. (e)(2) [allowing local governments to approve alternate material or methods of construction provided that the alternate has been approved by the state and is "for the purpose intended, at least the equivalent of that prescribed in the California Building Standards Code"].)

"It is true that the power granted to the local authorities by the state in this area is broad; however, because the state has preempted this area, that authority must be exercised pursuant to a specific statutory grant of authority, not pursuant to the local government's general police power." (*Building Industry Association v. City of Livermore* (1996) 45 Cal.App.4th 719, 726.) Accordingly, we conclude the Building Code and related provisions in the State Housing Law are general laws of statewide concern that are applicable to the City.

### E. The appellate process set forth in the Building Code is narrowly tailored to ensure uniform application of state law.

The last step in our analysis is to compare the scope of the statute to the statewide concerns sought to be addressed. The California Supreme Court has summarized this step as ensuring that the " 'the sweep of the state's protective measures may be no broader than its interest.' " (*California Fed. Savings & Loan Assn. v. City of Los Angeles* (1991) 54 Cal.3d 1, 25 (*Cal. Fed.*).) In other words, to be sufficiently narrowly tailored, the state law must be reasonably related to the issue at hand and limit the incursion into a city's municipal interest. (*Id.* at p. 24.)

In determining the sweep of a state law, the California Supreme Court has " 'emphasize[d] that there is a clear distinction between the *substance* of a[n] . . . issue and the *procedure* by which it is resolved.' " (*County of Riverside v. Superior Court* (2003) 30 Cal.4th 278, 289 (*Riverside*) [explaining that employee salaries are municipal affairs, but the process of fixing such salaries is a matter of statewide concern].) One appellate court has described the distinction as this: "A procedural (state) law leaves the ultimate decision making authority . . . in the hands of the charter county and thus can be applied to it." (*Dimon v. County of Los Angeles* (2008) 166 Cal.App.4th 1276, 1289–1290.) "A substantive law, on the other hand, takes away a charter county's ability to establish local [laws]." (*Id.* at p. 1290.)

For example, in *Baggett*, *supra*, 32 Cal.3d 128, the California Supreme Court held that state law requiring an administrative appeal for police officers was applicable to the city. (*Id.* at pp. 140–141.) Although the *Baggett* court found that the state law impinged

on the city's "implied power to determine the manner in which its employees may be removed," the impingement was not sufficient to render the state law unconstitutional. (*Id.* at p. 138.) With regard to the state law, the court found that "the total effect of this legislation is not to deprive local governments of the right to manage and control their police departments but to secure basic rights and protections to a segment of public employees who were thought unable to secure them for themselves." (*Id.* at p. 140.) Similarly, in *People ex rel. Seal Beach Police Officers Assn. v. City of Seal Beach* (1984) 36 Cal.3d 591, 597 (*Seal Beach*), the case concluded a state law setting forth dispute resolution procedures was applicable to city employees. In *Seal Beach*, the court found no conflict between the city's constitutional powers and the limited state regulation. (*Id.* at p. 601.)

Conversely, in *Riverside*, *supra*, 30 Cal.4th 278, the California Supreme Court held that a state law requiring the county to enter into mandatory arbitration with the union representing its employees violated the county's home rule authority as it was a substantive law permitting an arbitration panel rather than the governing body to establish local salaries. (*Id.* at p. 289.) Distinguishing its prior decision in *Baggett*, the court explained that the state law at issue in *Baggett* was constitutional because it was limited to "providing procedural safeguards" and did not interfere with " 'the setting of peace officers' compensation.' " (*Id.* at p. 288.)

The California Supreme Court in *Riverside* also cited with approval its decision in *Seal Beach*, *supra*, 36 Cal.3d 591, explaining that "the law in question did not establish a binding process but merely imposed procedural requirements. 'While the Legislature established a procedure for resolving disputes regarding wages, hours and other conditions of employment, it did not attempt to establish standards for the wages, hours and other terms and conditions themselves.' (*Id.* at p. 597.)" (*Riverside*, *supra*, 30 Cal.4th at pp. 288–289.)

The City contends *Baggett* and *Riverside* are not controlling because the impact of the instant case is "far less widespread" than matters of public employee labor disputes. In support of this assertion, the City avers no one other than Lippman "is affected by the

problems on Lippman's property." While the conditions leading to Lippman's citations are indeed a local issue, the fairness of the procedure used to resolve citations generally is a matter of statewide concern. Although there are no cases specifically addressing this issue, we conclude that, just as a state has an interest in securing "basic rights and protections" to public employees (*Baggett*, *supra*, 32 Cal.3d at p. 140), it also has an interest in protecting the basic rights of property owners. Thus, contrary to the City's contention, it is a " 'sensible and appropriate' " allocation of state power to require compliance with the Building Code's appeals board requirement. (See *Cal. Fed.*, *supra*, 54 Cal.3d at p. 17.)

The City further contends the Building Code's appellate requirements should not apply to the City because the property owners have other judicial safeguards in place that protect them from local abuse. Recently, a different panel of this division rejected a similar argument. In *Morgado v. City and County of San Francisco* (2017) 13 Cal.App.5th 1, 15, the city argued it was not required to comply with state law regarding administrative appeals brought by its police officers because, it claimed, the rights and protections it provided in its existing disciplinary scheme exceeded those in some other cities. Citing *Baggett*, *supra*, 32 Cal.3d at p. 135, we explained that a municipality was not exempt from state law "based on the asserted fairness of its disciplinary procedure as a whole." (*Morgado*, at p. 16.)

Finally, the City concedes any doubt whether a regulation relates to a municipal or state matter must be resolved in favor of the state, but it cautions that, "to the extent 'difficult choices' between . . . municipal and state governments can be 'forestalled,' they '*ought to be*.' " The City adds that " 'courts can avoid making such unnecessary choices by carefully insuring that the purported conflict is in fact a genuine one, unresolvable short of choosing between one enactment and the other.' ([*Cal. Fed.*], 54 Cal.3d 1, 16–17 (1991).)" We have already concluded, however, that the City's procedures do conflict with the Building Code because they deprive property owners of the basic procedural protections afforded by an appeals board or governing body.

For the foregoing reasons, we reject the City's "home rule" argument. We conclude section 1.8.8 of the Building Code is a general law seeking to assure fair resolution of appeals affecting property owners, even though it may impinge upon the City's control to the limited extent that it requires appeals to be heard by an appeals board, an authorized agency, or its governing body, rather than by a single hearing officer appointed by the enforcement agency.

### III.   DISPOSITION

The judgment denying the petition for writ of mandate is reversed. On remand, the trial court is directed to issue a writ of mandate compelling the City to establish an appeals board or authorized agency to hear appeals or provide for an appeal to its governing body as required by section 1.8.8 of the Building Code. Lippman is entitled to costs on appeal.

_____
Kennedy, J.*

We concur:


_____
Ruvolo, P. J.


_____
Rivera, J.


* Judge of the Superior Court of California, County of Contra Costa, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

CALIFORNIA COURT OF APPEAL
FIRST APPELLATE DISTRICT
DIVISION 4

**FILED**
**Jan. 22, 2018**

THOMAS LIPPMAN,
Plaintiff and Appellant,
v.
CITY OF OAKLAND,
Defendant and Respondent.

A141865
Alameda County No. RG12657623

BY THE COURT:

The written opinion which was filed on December 22, 2017 has now been certified for publication pursuant to rule 8.1105(b) of the California Rules of Court, and it is ordered published in the official reports.

Date:  Jan. 22, 2018                                                          Ruvolo, P.J.

Trial Court:                          Alameda County Superior Court

Trial Judge:                          Hon. Evelio Grillo

Counsel for Appellant:                Claassen Professional Corporation, John Stuart
                                      Claassen

                                      Pacific Legal Foundation, Damien M. Schiff,
                                      Jonathan Wood, J. David Breemer

Counsel for Respondent:               Barbara J. Parker
                                      City Attorney

                                      Otis McGee, Jr.
                                      Chief Assistant City Attorney

                                      Jamilah A. Jefferson
                                      Deputy City Attorney